729 P.2d 331

Chad AMBROSE and Robin Ambrose, minors, By and Through their mother and next friend, Dallene AMBROSE, Plaintiffs-Appellants,

v.

ILLINOIS–CALIFORNIA EXPRESS, INC., a Nebraska corporation authorized to do business in the State of Arizona, Aubrey Edsel McCurdy and Jane Doe McCurdy, husband and wife, Defendants-Appellees.

No. 1 CA–CIV 8563.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 7, 1986.

Reconsideration Denied Sept. 5, 1986.

Review Denied Dec. 2, 1986.

Langerman, Begam, Lewis and Marks by Samuel Langerman and Thomas F. Dasse, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth and Beshears, P.C. by Ralph Hunsaker, Scott E. Boehm and David M. Bell, Phoenix, for defendants-appellees.

JACOBSON, Presiding Judge.

The issue in this appeal is whether the trial court erred: (1) in concluding that

Arizona law does not recognize the existence of a cause of action in a minor child for loss of parental consortium; or (2) in refusing to apply Michigan rather than Arizona law on the issue.

## FACTS

On July 13, 1980, Hillard Ambrose was severely injured in a three-truck collision while driving a large "tractor-trailer" truck on Interstate 40 near Ashfork, Arizona. Ambrose, his wife Dallene, and his minor children Chad and Robin were all residents of Michigan. The drivers of the other two trucks were not residents of either Michigan or Arizona and their trucking companies were not incorporated in either Michigan or Arizona.

On July 13, 1981, Ambrose and his wife filed a personal injury action in Maricopa County superior court against the drivers of the other two trucks, McCurdy and Zebel, and against the companies which owned the trucks, Illinois-California Express, Inc. and Willis Shaw Frozen Express, Inc. The Ambroses sought recovery for Hillard's injuries and for his wife Dallene's loss of consortium. The complaint was amended to include claims by the two Ambrose children for loss of parental consortium. Numerous other suits arising out of the accident were filed by other parties and were consolidated with the Ambrose suit for trial to a jury. The jury subsequently awarded damages to both Ambrose and his wife against the drivers and owners of the other two trucks. Illinois-California Express, Inc. and McCurdy have filed an appeal from the judgment granting the damage awards. That appeal is not before us at this time.

The claims of the Ambrose children were not allowed to go to the jury; the trial court determined that Arizona does not recognize a cause of action for loss of parental consortium and that Arizona law should apply rather than Michigan law, which recognizes such a cause of action. Because the trial court believed that counsel for the Ambroses made remarks at trial which may have caused the jury to believe it could consider the effect of Ambrose's injuries on his children in assessing damages for Ambrose and his wife, the trial court admonished the jury as follows:

> Before we start with Mr. Hunsaker's closing argument, ladies and gentlemen, so that there is no misunderstanding, the law does not permit children to recover for injuries to a parent. Therefore, a verdict for Mr. Ambrose, if any, cannot include a damage claim for any of the Ambrose children.

Thereafter, the trial court entered a formal order dismissing the children's cause of action for loss of parental consortium. The appellants Chad and Robin Ambrose appeal from that order.

## PARENTAL CONSORTIUM

In *Jeune v. Del E. Webb Constr. Co.*, 77 Ariz. 226, 269 P.2d 723 (1954) the Arizona Supreme Court expressly ruled that a minor child has no cause of action for damages resulting from personal injury to a parent. In that case, the court held that neither the wife nor the minor child had a separate cause of action for damages resulting from the negligent injury of the husband and father. The court observed that the common law is and always has been that the wife has no such cause of action: "[i]t never has been the law that multiple actions could be brought by each member of the family for a negligent injury sustained by the father." 77 Ariz. at 228, 269 P.2d at 724.

The appellants argue that the *Jeune* case should be disregarded by this court because of subsequent opinions by Arizona courts recognizing claims for loss of consortium brought by various other family members. In *City of Glendale v. Bradshaw*, 108 Ariz. 582, 503 P.2d 803 (1972), the Arizona Supreme Court joined a growing number of jurisdictions granting wives the right to sue for loss of consortium for the negligent injury of their husbands, thereby overruling the portion of *Jeune* which denied that right to wives. In *Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360 (App. 1985), a question of first impression in Ari-

zona was raised concerning whether a cause of action was available to parents for the loss of consortium of an injured minor child. In determining that the cause of action should be recognized in Arizona, Division 2 of this court expressly stated it was not deciding whether Arizona recognizes a child's claim for loss of parental consortium. Petition for review to the Arizona Supreme Court was denied.

We also note that the Supreme Court has now recognized that a cause of action exists for parents for loss of consortium of an injured adult child. *Frank v. Superior Court*, 150 Ariz. 228, 722 P.2d 955 (1986). These cases certainly call in question the continuing validity of *Jeune*. However, whether prior decisions of the highest court of the state are to be disaffirmed is a question for that court. *Robles v. Severyn*, 19 Ariz.App. 61, 504 P.2d 1284 (1973). Since we are not empowered to overrule decisions of the Supreme Court, *State v. Stotts*, 8 Ariz.App. 340, 446 P.2d 244 (1968), we consider the issue no further.

### CHOICE OF LAW

Appellants argue that the trial court should have applied Michigan law in deciding whether the appellants could maintain a claim for loss of parental consortium. If the trial court had applied Michigan law on the question, there is no doubt but that it would have found the appellants were entitled to maintain their claim. Michigan has been in the forefront of jurisdictions allowing children to sue for loss of parental consortium. *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981).

In analyzing conflict of law problems in order to determine which state's law to apply, Arizona courts follow the rules embodied in the *Restatement (Second) of Conflicts* (1971). *See Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254 (1968) (discarding the doctrine of *lex loci delicti*). There are three sections of the *Restatement* applicable to this case. The first is § 145 which sets forth general principles to guide courts in deciding choice of law questions involving torts:

§ 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The second is § 6, referred to in § 145. It sets forth choice-influencing factors relevant to choosing the applicable rule of law:

§ 6. Choice-of-law principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The third, § 146, focuses on personal injury actions:

§ 146.  Personal Injuries

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

■ In determining whether Arizona or Michigan[1] has the more significant relationship to the occurrence and to the parties in light of the particular issue raised in this case, we start by analyzing the four contacts listed in § 145(2).  Of the four contacts, three attach to Arizona, the place of injury, the place where the conduct causing the injury occurred, and the place where the relationship between the parties centered, to the extent that there was any relationship.  The only such contact Michigan has is that it is the home state of the appellants.  Neither Arizona nor Michigan has any significant contact with the various defendants involved in the case since each were domiciled or incorporated in other states.  Although Arizona is the state with the most number of contacts listed in § 145(2), the determination of which state has the most significant relationship consists of more than a mere counting of contacts.  *Schwartz, supra.*  That determination is primarily qualitative, not quantitative.  *Id.; Bryant v. Silverman,* 146 Ariz. 41, 703 P.2d 1190 (1985).

■ In *Bryant, supra,* the choice of law issue concerned the damages to be awarded for the wrongful death of a person killed in an airline crash.  The relevant contacts were divided between Arizona and Colorado.  The ticket purchase centered the relationship in Colorado.  Additionally, the crash occurred there, but the parties were domiciled or incorporated in Arizona.

Arizona law placed no limit on the amount of compensable damages to be recovered and allowed recovery of punitive damages.  Colorado's wrongful death statute limited the amount of compensatory damages and allowed no recovery of punitive damages.  In determining which contacts were most significant, the court noted that the state where the injury occurs does not have a strong interest in compensation if the injured plaintiff is a nonresident; compensation of an injured plaintiff is primarily a concern of the state in which plaintiff is domiciled.  In *Bryant,* the court found that the relationship of the parties was of relatively low importance.  It concluded that the domicile contact carried greater weight in determining which state's law to apply.

We find the holding in *Bryant* controlling.  The specific issue before us is whether the appellants, minor children whose father was injured, should be allowed to pursue claims for their own damages consisting of loss of parental consortium.  Michigan, which recognizes the claim, would have a strong interest in having its residents compensated for such injury.  Even though Arizona is the state of injury, the state where the conduct arose and the state where the litigation was brought, it does not have an interest in protecting nonresident defendants from claims brought against them.  In sum, under the facts of this case, Michigan's contact as the domicile of the plaintiff carries greater weight than any of the Arizona contacts.

Having determined the distribution of contacts and the relative weight, we now consider the choice of law principles enunciated in § 6 of the *Restatement (Second) of Conflicts.*  First, the needs of the interstate and international systems is a factor with which we have little concern in this case.  As noted in *Gordon v. Kramer,* 124 Ariz. 442, 604 P.2d 1153 (App.1979), which involved the issue of whether one state's guest statute should apply to prevent suit, interstate travel by residents of various

---

1.  None of the parties has argued that the laws of the states of residency of the other parties to this action should apply.

states is not appreciably affected by the choice of tort law question.

We now consider the factor of ease in the determining which law to apply. Certainly, it would be somewhat easier to apply Arizona law which allows no recovery than it would be to apply Michigan law under which the jury would have to determine additional liability as well as damages, if awarded. Application of Michigan law, however, would not unduly burden an Arizona jury. Under Arizona law, a jury would be required to determine damages for loss of spousal and filial consortium. In fact, the jury in this case determined damages for loss of spousal consortium. In our opinion, a jury will have no greater difficulty in determining additional liability and damages for loss of parental consortium. Thus, we do not consider this factor to be of great importance in determining which law to apply.

We are left with the three policy factors: the basic policy underlying the particular field of law involved, here tort law, and the relevant policies of Arizona, and Michigan.

The fundamental policies underlying tort law as enunciated by the Arizona Supreme court focus on providing compensation for injured victims and detering tortious conduct. *Bryant, supra; Gordon, supra.* Courts which do not grant children a claim for loss of parental consortium do not deny that the children have suffered a loss. The main reason for refusing to recognize the claim is the policy concern that legal causation must terminate somewhere. *See e.g., Berger, supra.* We believe that under *Bryant,* Michigan law should be applied to the appellants' claim for parental consortium.

In conclusion, as between Arizona and Michigan we find that Michigan has the greatest interest in the determination of whether the appellants should be allowed to recover from the defendants for loss of parental consortium. Arizona's connections with this case arise solely because the accident occurred on its portion of the interstate highways. No highway safety problem, however, is involved in the partic-

ular issue presented in this case. Arizona has no interest in protecting foreign defendants from suits brought in Arizona courts. Michigan has considerable interest in compensating its domiciliary plaintiffs. We hold that Michigan law, which recognizes the appellants' cause of action for loss of parental consortium, applies to this case.

The judgment is reversed and the case is remanded for a new trial on liability and damages for appellants' claims of loss of parental consortium. Since the other defendants were not named in this appeal, the new trial is granted only against appellees Illinois-California Express, Inc., and McCurdy.

FROEB, C.J., and EUBANK, J., concur.

## ORDER

Appellees' motion for reconsideration and the response thereto were considered by the Court, consisting of Presiding Judge Eino M. Jacobson, and Judges William E. Eubank and Donald F. Froeb.

IT IS ORDERED denying the motion for reconsideration.

IT IS FURTHER ORDERED that the Clerk of this Court is directed to delete the last paragraph of the opinion filed herein and substitute the following:

The judgment is reversed and the case remanded for a new trial limited to damages only for appellants' claim of loss of parental consortium. Since the other defendants were not named in this appeal, the new trial is granted only against appellees Illinois-California Express, Inc. and McCurdy.