820 P.2d 316

Albin R. HOELLER, Lucille D. Hoeller, Julie D. Hoeller, and Terri L. Hoeller, Plaintiffs–Appellants,

v.

RIVERSIDE RESORT HOTEL a/k/a Riverside Casino Club, a/k/a Don Laughlin's Riverside Resort, a/k/a Laughlin Land and Cattle Company, Defendant–Appellee.

No. 1 CA–CV 90–056.

Court of Appeals of Arizona, Division 1, Department C.

May 21, 1991.

Review Denied Dec. 3, 1991.

Babcock, Locher, Neilson & Mannella by Robert F. Mannella, Anoka, Minn., and Gerald A. Pollock, Phoenix, for plaintiffs-appellants.

Bell & Young, Ltd. by Richard D. Young, Donald L. Wood, Las Vegas, Nev., and Steve Lee, Kingman, for defendant-appellee.

## OPINION

EHRLICH, Judge.

In this case, a Nevada casino is claimed to have negligently served alcohol to an obviously intoxicated Arizona resident who later caused an automobile accident in Arizona, injuring four other Arizona residents. This appeal presents the question of which state's law should be applied to the Arizona residents' claims against the Nevada casino.

## FACTS AND PROCEDURE

For purposes of the motion for summary judgment, the parties agreed in substance on the facts material to the conflict of laws issue. The Riverside Resort Hotel & Casino ("the casino") is located in Laughlin, Nevada, on the Colorado River, across from Bullhead City, Mohave County, Arizona. It operates under a Nevada gaming license and a Nevada liquor license. The casino advertises in the Bullhead City area and other surrounding communities in Mohave County, as well as in a significant number of urban markets in and out of Arizona. The record suggests that the casino may maintain a large parking facility on the Arizona side of the river, as well as a ferry operation across the river for casino patrons, and it also may have contributed to the costs of building a bridge across the river.

On December 15, 1985, Elmer Eugene Tyler, an Arizona resident, spent time gambling and drinking alcohol at the casino. The casino continued to serve Tyler after he became intoxicated. Indeed, casino employees later had to help Tyler to his car. At approximately 6:00 p.m. on that day, Tyler was returning home from Laughlin, driving south on Interstate 95. Near Bullhead City, he crossed the centerline and collided head-on with the Hoellers' northbound vehicle. The Hoellers, residents of Arizona, were seriously injured.

■ The Hoellers brought this negligence action against the casino in Mohave County Superior Court. The casino moved for summary judgment, in part on the theory that the applicable choice of law principles required the court to apply Nevada law to the Hoellers' claims against the casino. Nevada follows the traditional rule that a liquor vendor cannot be held responsible to third persons for injury or death caused by an intoxicated driver. *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 101, 450 P.2d 358, 360 (1969).[1] The Hoellers opposed the motion, arguing that the court should apply the common law of Arizona, which imposes on tavern owners a duty to exercise reasonable care not to provide liquor to intoxicated persons under circumstances when they know or should know that to do so creates an unreasonable risk of harm to others who may be injured either on or off of the premises. *Ontiveros v. Borak*, 136 Ariz. 500, 511, 667 P.2d 200, 211 (1983).[2]

After argument, the trial court issued a minute entry expressing its conclusion that Nevada law must control and that the court therefore had no alternative than to grant the casino's motion for summary

---

1. The casino also argued in its motion for summary judgment that the court lacked personal jurisdiction over the defendants and that service of process had been insufficient.

2. The court in *Ontiveros* relied on the common law and Arizona statutory law as independent, alternative bases for the tavern owner's duty of care. 136 Ariz. at 508–11, 667 P.2d at 208–11.

judgment. The court's ruling stated in part:

> The Nevada courts have determined it is up to their legislature to impose liability upon the liquor vendor for the results of conduct of their patrons and absent such legislation, the liquor vendor has no liability to injured third parties. *Hamm v. Carson City Nuggett [Nugget], Inc.,* 450 P.2d 358. Although the reasoning of the Arizona case of *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 is more appealing to this Court and reaches a "better result" with regard to the issue of liability of licensed liquor vendors, this Court believes our appellate courts will follow the reasoning of the Idaho court as set forth in *Estates of Braun v. Cactus Pete's, Inc.,* 108 Idaho 798, 702 P.2d 836 and rule that this Court must apply Nevada law as to the issue of liability of the Defendants.[3]

The Court, in making this ruling is well aware of many facts which are not clear in the record of this case. The symbiotic relationship which exists between Bullhead City, Arizona and Laughlin, Nevada is well known to all. The gambling industry has experienced phenomenal growth on the Nevada side of the river, while a few hundred yards away Bullhead City has also experienced explosive growth, especially in the residential and commercial area. Bullhead City acts as a supply center and bedroom community for the population related to the casinos in Laughlin, Nevada and is the residence of many of their employees. The airport which serves the area is located in Arizona and is presently undergoing expansion to allow large jet aircraft to operate from it.

. . . .

. . . This Court is well aware of the many DWI accidents which happen [in] Mohave County. Apparently this County incarcerates three times as many people in the Department of Corrections for felony DWI's as our population would apparent-

ly justify. Many of these individuals were given free alcohol at casinos in Nevada, including Laughlin and Las Vegas casinos. Many of these DWI accidents involved Arizona drivers who were alleged to have become intoxicated in Nevada casinos, who injure Arizona residents—such as is alleged to have happened in this case.

The trial court entered formal judgment in favor of the casino in accordance with its ruling. The Hoellers timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

### ANALYSIS

In *Schwartz v. Schwartz,* 103 Ariz. 562, 565, 447 P.2d 254, 257 (1968), *overruled on other grounds, Fernandez v. Romo,* 132 Ariz. 447, 646 P.2d 878 (1982), the Arizona Supreme Court adopted the "grouping of contacts" or "most significant relationship" approach of the 1968 draft of the Restatement (Second) of Conflict of Laws as the rule for determining choice of law issues in multi-state tort litigation. Later Arizona cases have consistently followed the multi-factor analysis encompassed by §§ 6(2), 145 and 146 of the Restatement (Second) of Conflict of Laws (1971) ("Restatement") in resolving such issues. *E.g., Bates v. Superior Court,* 156 Ariz. 46, 49–51, 749 P.2d 1367, 1370–72 (1988); *Wendelken v. Superior Court,* 137 Ariz. 455, 457–60, 671 P.2d 896, 898–901 (1983); *Ambrose v. Illinois–California Express, Inc.,* 151 Ariz. 527, 529–31, 729 P.2d 331, 333–35 (App.1986).

Restatement § 6 lists the general factors to be considered in resolving all choice of law questions. It states:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

---

**3.** The trial court did not reach the questions of personal jurisdiction or insufficiency of service of process.

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement § 145 sets forth general standards with reference to which the seven factors listed in Restatement § 6(2) are to be considered in tort cases. It provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Additionally, Restatement § 146 states a more precise rule that is specific to personal injury cases. *See* Restatement (Second) of Conflict of Laws, Ch. 7, Title B, Introductory Note, at 430. Section 146 provides:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect

to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*See generally Bates,* 156 Ariz. at 48–49, 749 P.2d at 1369–70 (applying Restatement §§ 6(2), 145 and 146).

■ In this case, the Hoellers' injuries occurred in Arizona. Pursuant to Restatement § 146, Arizona law should be applied to determine the rights and liabilities of the Hoellers and the casino unless, with respect to the issue of tavern owner liability, Nevada has a more significant relationship to the occurrence and the parties under the principles stated in Restatement § 6. Accordingly, although Restatement § 146 initially points toward Arizona law, we must proceed to determine, pursuant to Restatement §§ 6 and 145, whether Nevada's relationship with the occurrence and the parties nevertheless may be more significant than that of Arizona.

In accordance with Restatement § 145, we first characterize the respective relationships of Nevada and Arizona with the occurrence and the parties in terms of the "contacts" listed by § 145(2). Arizona is the place where the Hoellers' injuries occurred and their state of residence. Nevada is the casino's place of business and, with respect to the issue of tavern-owner liability, the place where the conduct causing the injury allegedly occurred. There is no relationship between the Hoellers and the casino, and consequently neither Nevada nor Arizona has that "contact" with the parties.

Determining which state's relationship with the occurrence and the parties is the more significant requires a qualitative analysis. *Bates,* 156 Ariz. at 49, 749 P.2d at 1370; *Ambrose,* 151 Ariz. at 530, 729 P.2d at 334. Accordingly, we must now evaluate the two states' § 145 contacts in accordance with the general choice of law factors of Restatement § 6(2).

Two of these factors are of little help in assessing the relative significance of the two states' contacts in this case. Nevada

and Arizona law on tavern-owner liability can be determined and applied with equal ease. Further, as in *Bates,* 156 Ariz. at 50, 749 P.2d at 1371, the needs of the interstate and international legal systems are not perceptibly involved here.

When analyzed and weighed together, the remaining factors under § 6 tip the balance in favor of applying Arizona law. The basic policies underlying tort law are to provide compensation for injured victims and to deter tortious conduct. *Bryant v. Silverman,* 146 Ariz. 41, 46, 703 P.2d 1190, 1195 (1985); *Ambrose,* 151 Ariz. at 531, 729 P.2d at 335; *Gordon v. Kramer,* 124 Ariz. 442, 445, 604 P.2d 1153, 1156 (App.1979). Applying Arizona law here would tend to further both of these basic policies. Applying Nevada law would ensure their frustration.

As the forum state and the domicile of the injured parties, Arizona has a strong interest in providing an opportunity for its residents to recover full compensation from persons and businesses that contribute to automobile accidents on Arizona's highways. Equally strong is Arizona's interest in holding tortfeasors responsible for their actions' foreseeable effects in Arizona. As our supreme court observed in *Ontiveros:*

> The statistics cited in the concurring opinion in *State ex rel. Ekstrom v. Justice Court,* 136 Ariz. 1, 663 P.2d 992 (1983), indicate a frightful toll—25,000 deaths and 650,000 injuries each year in motor vehicle accidents in which alcohol is a contributing cause. We believe, therefore, that the words of Division II of our Court of Appeals are correct:
>
> > It seems clear that the common law rule is an anachronism, unsuitable to our present society, and that its reasoning is repugnant to modern tort theories.
>
> *Lewis v. Wolf,* 122 Ariz. [567] at 570, 596 P.2d [705] at 708 [ (App.1979) ]. We agree with the Pennsylvania Supreme Court that "(t)o serve an intoxicated person more liquor is to light the fuse." *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 632, 198 A.2d 550, 553 (1964).

136 Ariz. at 507, 667 P.2d at 207. Arizona has a strong interest in applying its substantive law in this case.

Against the interests of Arizona we must weigh those of Nevada, the casino's place of business and the place where the conduct that allegedly caused the Hoellers' injuries occurred. In *Hamm,* the Nevada Supreme Court considered whether to abandon the common-law rule of the nonliability of tavern owners. The court held that if civil liability were to be imposed on tavern owners who serve intoxicated persons who later injure others, it should be accomplished by legislative act after appropriate surveys, hearings and investigations have been conducted to ascertain the need for the imposition of civil liability and the expected consequences. 85 Nev. at 100, 450 P.2d at 359.

The Nevada legislature has enacted no provision imposing civil liability on tavern owners who negligently serve intoxicated persons and thereby contribute to injuring others. Indeed, in 1973, the Nevada legislature repealed a statute that had provided criminal penalties for selling, giving or furnishing intoxicating liquor to habitual drunkards or adults known to be intoxicated. 1973 Nev.Stat.Ch. 604, § 8, repealing Nev.Rev.Stat. § 202.100. The Nevada case law and statutes thus suggest that that state's policy is to free tavern owners, and other alcohol purveyors such as casinos, from the cost and inconvenience of incurring either civil or criminal liability in the operation of their businesses. Because Nevada is the place where the casino does business and the place where it allegedly engaged in the conduct on which the Hoellers base their action, Nevada has a significant interest in applying its law to determine the question whether the casino may be held civilly liable.

The goals of justified expectations and predictability of result weigh in favor of applying Arizona law, however. The casino advertises in major urban centers all over the country; there is extensive advertising in many cities in Arizona. It reputedly maintains a large casino parking lot in Arizona and a ferry operation between the

lot and the casino. It therefore cannot help but know that many of the patrons it seeks, many of those who sit at its tables and drink its liquor, have come to the casino from Arizona and will return to Arizona. The casino also must know that those who leave its facilities in an intoxicated condition and drive on Arizona's highways may cause accidents that injure innocent third persons in Arizona. The casino cannot justifiably expect that only Nevada law will be applied to determine whether it must respond in damages for negligently serving alcohol to intoxicated patrons.

The Hoellers, on the other hand, had no contact with Nevada. They were Arizona residents injured by an Arizona resident while driving on an Arizona highway. Under those circumstances, the Hoellers would be justified in expecting that their personal injury claims would be adjudicated under Arizona law. As the Missouri Court of Appeals stated in analyzing closely analogous facts:

> Predictability of result would seem to point to a choice of Missouri law. On the one hand, one could say that a Missouri choice of law would be an unfair surprise to [the defendant tavern owner] because her connection with the present case occurred as a result of transactions in Illinois. However, it is unlikely that [the tavern owner] would have been totally unaware that many of her patrons came from Missouri because her tavern is located near the Illinois–Missouri border in Granite City, Illinois. Thus, the fact that an accident occurred in Missouri as a result of the intoxicated condition of one of her patrons blunts any claim of respondent that a choice of Missouri law was an unpredictable consequence.

If one examines the question of predictability from appellants' standpoint, any choice of law other than Missouri law would be a manifestly unfair surprise. Appellants reside in Missouri. The decedent lived and worked here. To tell appellants that a Missouri resident who is killed by a second Missouri resident while the former is working within Missouri that Illinois law governs a resulting lawsuit would doubtless be met with shock and disbelief.

*Carver v. Schafer,* 647 S.W.2d 570, 577–78 (Mo.App.1983).

Similarly, the goal of promoting certainty and uniformity of result would be furthered best by applying Arizona law. Of the four decisions from other jurisdictions of which we are aware concerning fact situations and legal conflicts similar to those in the instant case, three courts have applied the law of the forum jurisdiction. *See Sommers v. 13300 Brandon Corp.,* 712 F.Supp. 702, 705–6 (N.D.Ill.1989) (applying "most significant relationship" analysis of Restatement (Second) of Conflict of Laws §§ 6, 145 and 146); *Blamey v. Brown,* 270 N.W.2d 884, 890, 2 A.L.R. 4th 940 (Minn. 1978), *overruled on other grounds, West American Ins. Co. v. Westin, Inc.,* 337 N.W.2d 676 (Minn.1983) (applying five "choice-influencing considerations" roughly analogous to the factors listed in Restatement § 6(2)); *Carver,* 647 S.W.2d at 578 (applying Restatement's "most significant relationship" analysis). *See generally* Annotation, *Choice of Law as to Liability of Liquor Seller for Injuries Caused by Intoxicated Person,* 2 A.L.R. 4th 952 (1980).

Only in *Estates of Braun v. Cactus Pete's, Inc.,* 108 Idaho 798, 702 P.2d 836 (1985), which the trial court followed in the instant case, was the law of the tavern owner's place of business applied. Although the Idaho Supreme Court in *Estates of Braun* ostensibly applied the Restatement's analysis in reaching its conclusion, the court's opinion all but ignored the policies of Idaho as the forum state and the state of the plaintiffs' residence and focused almost exclusively on the anti-liability policy of Nevada. The court reasoned that although the accident involved only Idaho residents and occurred in Idaho, Nevada law should apply because the allegedly negligent acts were committed solely in Nevada by a casino there. "[T]o impose liability based upon Idaho standards would result in an extra-territorial application of Idaho's negligence laws to businesses and activities which, by Nevada standards, are not subject to civil liability." *Id.* at 800, 702 P.2d at 838.

We agree instead with the dissent in *Braun* which argued that "the most significant relationship test as enunciated in Restatement (Second) of The Conflict of Laws (1968)" should apply. *Id.* at 801, 702 P.2d at 839.

The Court of Appeals' analysis of the principles of Section 6 of the Restatement indicates that on the whole the interests of Idaho, the forum state, are better served by application of Idaho law. While Nevada has an interest in protecting the economic interests of its business owners, this casino advertises and caters in large part to residents of Idaho. Its owner is surely aware that patrons leaving his establishment will be operating motor vehicles in Idaho and will be subject to Idaho law.

Similarly, the Court of Appeals determined on consideration of the Restatement, Section 145, contacts to be taken into account that Idaho contacts were more significant than Nevada's. The accident and deaths occurred in Idaho between Idaho residents. The conduct allegedly causing the accident occurred in the casino in Nevada, but with results that could predictably affect subsequent actions of a motorist in Idaho. Again, it is most significant that Idaho patrons constitute a substantial portion of Cactus Pete's customers—many of whom are known to immediately drive northward after consuming the libations served by Cactus Pete's.

*Id.*

After considering all of the applicable factors listed in Restatement § 6(2), we conclude on balance that Arizona, not Nevada, has the "most significant relationship" to the occurrence and the parties with respect to the issue of tavern-owner liability in this case. Pursuant to Restatement §§ 145 and 146, the trial court therefore should apply Arizona law with respect to that issue on remand.

* Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determi-

We hereby reverse and remand this matter for proceedings consistent with this opinion.

CLABORNE and TAYLOR, JJ., concur.