990 P.2d 669

Michelyn WILLIAMS and Kelly Williams, Plaintiffs–Appellants,

v.

LAKEVIEW CO., a Nevada general partnership d/b/a Gold Strike Inn & Casino; David R. Belding, Partner; Michael S. Ensign, Partner; William A. Richardson, partner; David R. Belding and Jane Doe Belding, husband and wife; Michael S. Ensign and Jane Doe Ensign, husband and wife; William A. Richardson and Jane Doe Richardson, husband and wife, Defendants–Appellees.

No. 1 CA–CV 98–0548.

Court of Appeals of Arizona, Division 1, Department C.

July 1, 1999.

Review Granted Jan. 4, 2000.

470

Law Offices of Keith S. Knochel, P.C. by Keith S. Knochel, Bullhead City, Attorneys for Plaintiffs–Appellants.

Jennings Strouss & Salmon by James M. Ackerman, David B. Earl and H. Christian Bode, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

BERCH, Judge.

¶ 1 Michelyn and Kelly Williams appeal from the trial court's dismissal of their complaint against Lakeview Company, which does business as the Gold Strike Inn, and other defendants (collectively, "Lakeview") for lack of personal jurisdiction. For the reasons explained below, we reverse.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Plaintiffs Kelly and Michelyn Williams, passengers in a car driven by Patrick Kelsey, sustained serious injuries in a single-car accident when returning from a trip to Defendant Lakeview's Gold Strike Inn and Casino in Nevada. Plaintiffs allege that the accident occurred because Casino employees over-served alcoholic beverages to Mr. Kelsey. All plaintiffs are Arizona residents and the accident occurred on U.S. Highway 93 in Mohave County, Arizona.

¶ 3 The Gold Strike Inn is located just a few miles from the Arizona/Nevada border. The Casino derives business advantage from its location as the first Casino Arizonans encounter when they cross the border, and considers its location a valuable business asset. Indeed, Lakeview regularly advertises in Arizona, both for individual customers and for tour operators to bus tourist groups to the Casino.[1] That advertising has proved successful: Each day, ten to fifteen tour buses stop at the Gold Strike Inn, bringing approximately 300 potential customers. Four to six buses each week come from Arizona, from cities such as Flagstaff, Prescott, Phoenix, and Lake Havasu City. Tour bus trade is an important part of the Casino's business.

1. The solicitations were sent to more than fifty tour bus operators throughout Arizona.

¶4 Lakeview regularly runs a full-page advertisement in the Cerbat Gem, a newspaper that serves northwestern Mohave County, including the area in which plaintiffs reside. Lakeview acknowledges that each advertisement solicits the patronage of the Casino's "Arizona neighbors" and that it appreciates the business of its Arizona customers.

¶5 Defendants also rely on Arizona to help supply their work force; seventeen of defendants' employees reside in Arizona. Arizonans thus not only fill the Casino as customers, but help staff it as well. From January 26, 1997 to February 15, 1997, a period encompassing the February 8, 1997 accident, approximately twenty-three percent of the occupants of the Inn were Arizona residents; for the remainder of February, seventeen percent of the customers were Arizona residents.

¶6 Plaintiffs filed suit in Arizona. Defendants moved to dismiss, claiming that Arizona courts lack personal jurisdiction over them and that Nevada law, which would shield the Casino from liability, should apply to the case. The trial court agreed with Lakeview that jurisdiction was lacking and dismissed the case without ruling on the choice-of-law issue. Plaintiffs appealed.

## DISCUSSION

*Personal Jurisdiction*

¶7 We review *de novo* a dismissal for lack of personal jurisdiction, *see A. Uberti and C. v. Leonardo,* 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995), accepting as true all material facts alleged by the non-movant. *See G.T. Helicopters, Inc. v. Helicopters, Ltd.,* 135 Ariz. 380, 382, 661 P.2d 230, 232 (App.1983).

¶8 Arizona's long-arm statute is very broad and is intended to allow Arizona courts to exert personal jurisdiction over a non-resident litigant to the maximum extent permitted by the Constitution of the United States. *See Houghton v. Piper Aircraft Corp.,* 112 Ariz. 365, 367, 542 P.2d 24, 26 (1975); *see also* Ariz. R. Civ. P. 4.2(a); *Uberti,* 181 Ariz. at 569, 892 P.2d at 1358. Consequently, we need only address constitutional

limitations imposed by the Due Process Clause. *See Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987); *see also Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.1985) (if a state's long-arm rule extends to the limits of due process, the court need only inquire whether asserting jurisdiction is constitutionally permissible).

¶9 The Due Process Clause of the federal constitution limits a state's power to exercise jurisdiction over non-resident defendants who have "no contacts, ties, or relations" with the forum state, *see International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and requires that the defendants have sufficient contacts with the state to make it fair to subject them to the jurisdiction of the state's courts. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (defendant must have substantial or continuous and systematic contacts with the forum to support general jurisdiction). Two separate but interrelated factors govern the exercise of personal jurisdiction: (1) the defendants' contacts with Arizona and (2) the reasonableness of exercising jurisdiction over the Nevada defendants. *See Uberti,* 181 Ariz. at 569, 892 P.2d at 1358 (citing *Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

¶10 If the quantity and quality of a defendant's contacts with the forum state are sufficient, a state may constitutionally assert either general or specific jurisdiction over a foreign defendant. General jurisdiction subjects a defendant to suit on virtually any claim within the court's competence, even those that do not arise out of or relate to the defendant's forum-related activities, *see Batton,* 153 Ariz. at 270, 736 P.2d at 4, but applies only when the defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Id.*

¶11 We accept as true plaintiffs' assertion that Lakeview regularly advertised in a local Arizona newspaper, the Cerbat Gem, soliciting Arizona residents to visit its Nevada Casino, that a substantial number of

Lakeview's customers were Arizona residents, that Lakeview employed seventeen Arizona residents at its Casino in Nevada, and that Lakeview actively solicited Arizona tour bus companies to bring passengers to its Casino. We conclude, however, that these activities are not sufficiently "substantial" or "continuous and systematic" to confer general jurisdiction over Lakeview. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 487, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *see also Westphal v. Mace,* 671 F.Supp. 665, 667 (D.Ariz.1987) (although defendant advertised in Arizona, sponsored travel packages through Arizona travel agents, and published a toll-free phone number in Arizona phone directories, general jurisdiction over defendant did not exist for lawsuit on Nevada accident). Lakeview did not regularly conduct business in Arizona, nor did it have any agents, offices, property, or other physical presence within Arizona. Thus, Lakeview's contacts with Arizona are not sufficiently substantial or continuous and systematic to support the assertion of general jurisdiction.

¶ 12 Instead, we focus on specific jurisdiction, which allows a state to exercise jurisdiction over a foreign defendant when the cause of action arose in the forum state; the defendant caused the event to occur in the forum state or has purposefully availed itself of the privilege of conducting business in the forum, thereby invoking the benefits and protections of its laws; and the exercise of jurisdiction comports with fair play and substantial justice and therefore satisfies the due process rights secured by the Fourteenth Amendment to the United States Constitution. *See Uberti,* 181 Ariz. at 569, 892 P.2d at 1358 (citing *Maloof v. Raper Sales, Inc.,* 113 Ariz. 485, 487, 557 P.2d 522, 524 (1976)). In determining whether the exercise of personal jurisdiction would violate the defendant's due process rights, we consider the defendant's "minimum contacts" with the forum state, and the reasonableness of exercising jurisdiction over the defendant. *Uberti,* 181 Ariz. at 569, 892 P.2d at 1358 (citing *Asahi,* 480 U.S. at 112–13, 107 S.Ct. 1026).

¶ 13 Some cases set forth as a separate element the requirement that the claim must "arise out of or relate to" the defen-dant's activities in the forum. *See, e.g., Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Armstrong v. Aramco Servs. Co.,* 155 Ariz. 345, 349, 746 P.2d 917, 921 (App.1987). Other cases have required this connection to the forum state, but without setting it forth as a separate prong of the test. *See Batton,* 153 Ariz. at 271, 736 P.2d at 5 (in determining whether specific jurisdiction exists, "the minimum contacts inquiry focuses on the relationship between the defendant, the forum, and the litigation"). In any event, jurisdiction is appropriate if the "defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there," *id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)) (emphasis omitted), and the defendant has "'purposefully directed' [its] activities at residents of the forum." *Hoskinson v. California,* 168 Ariz. 250, 253, 812 P.2d 1068, 1070 (App.1990) (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174). Accordingly, we first must determine whether Lakeview "purposefully created contacts" with Arizona, *see Batton,* 153 Ariz. at 271, 736 P.2d at 5, or purposefully directed its activities at residents of Arizona. *See id.; see also Hoskinson,* 168 Ariz. at 252, 812 P.2d at 1070.

¶ 14 We conclude that Lakeview did both. At the time of the accident (February 8, 1997), Lakeview had advertised in an Arizona monthly newspaper each month for more than a year, and had mailed brochures to "between 50 and 100" Arizona tour bus companies offering to pay commissions to tour operators based on the amount of time that they parked their buses, and hence kept Arizona patrons at Lakeview's Casino. Some of the ten to fifteen tour buses that stopped at the Casino each day originated from Arizona, and approximately twenty-three percent of the rooms at the Casino were booked by Arizona residents from January 26 to February 15, 1997, the weeks surrounding the accident. Thus, Lakeview actively, and apparently successfully, solicited business in Arizona; its behavior was "purposeful, voluntary, and calculated to have an effect in Arizona." *O'Connor, Cavanagh, Anderson,*

*Westover, Killingsworth & Beshears, P.A. v. Bonus Utah, Inc.*, 156 Ariz. 171, 173, 750 P.2d 1374, 1376 (App.1988). We therefore conclude that Lakeview purposefully created contacts with Arizona sufficient to support jurisdiction over Lakeview for a cause of action that occurred in Arizona and arose out of or related to Arizona residents' visits to the Casino. *See Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir.1990) ("[A] non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business."), *reversed on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

¶ 15 Lakeview asserts that the exercise of personal jurisdiction over it would be inappropriate because it does business only in Nevada, its partners are all residents of Nevada, and it owns no real or personal property in Arizona. The Supreme Court has determined, however, that the lack of physical presence in or contact with the forum state does not automatically deprive its courts of jurisdiction. *See Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779–81, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In *Calder,* the Court found the effects of activities that non-resident defendants "intentionally directed" toward the forum state a sufficient basis on which to sustain the exercise of jurisdiction. *Calder,* 465 U.S. at 790, 104 S.Ct. 1482; *see also Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that the absence of physical contacts can defeat personal jurisdiction there.").

¶ 16 Lakeview also claims that the plaintiffs' cause of action cannot properly be maintained in Arizona because the damage-causing event—serving alcohol to an intoxicated person—occurred in Nevada, not Arizona. For this proposition, they rely on a federal district court case purportedly requiring that

"[t]he actual damage causing event must occur in the forum. Feeling the effect of an out-of-state event in the forum is not enough for personal jurisdiction to exist." *Westphal,* 671 F.Supp. at 668. There, however, the injury-causing event, a traffic accident in a parking lot caused by defendant's negligent maintenance of the lot, occurred in Nevada. *See id.*

¶ 17 Unlike the situation in *Westphal,* the accident that caused the plaintiffs' injuries—the injury-causing event—occurred in Arizona. Lakeview's potential liability for this injury-causing event is premised upon its negligence in serving liquor to an intoxicated person, thereby creating the conditions that led to the injury and damages; that the serving of alcohol occurred in Nevada does not, however, mean that the "injury causing event" occurred in Nevada for purposes of determining whether Arizona has jurisdiction in this case. Thus, to the extent that *Westphal* could be construed to require that the injury-causing event occur in the forum state, this case is distinguishable from *Westphal:* [2] the injury-causing event—the car accident—occurred in Arizona, the forum state.

¶ 18 Lakeview also argues that the plaintiffs' injuries do not arise out of or relate to Lakeview's solicitations for business in Arizona. We disagree. Gambling, drinking, and good times are the implicit promises in the advertising that lures Arizona customers to the Casino. Serving alcohol to Mr. Kelsey, a Casino patron, is reasonably related to the solicitations and to Mr. Kelsey's and the plaintiffs' presence at the Casino. To argue that overserving alcohol was not a cause of the plaintiffs' injuries ignores modern tort doctrine and the realities of interstate commerce. If a Nevada resident loaded a time bomb into a car, which it then sent across the border into Arizona, or stood on the Nevada side of the border and shot a cannon into Arizona, which exploded and injured an Arizona citizen, it would be unreasonable for the Nevada resident, having caused an event to occur in Arizona, not to expect to be haled into court here to answer for the offense. Given the reasonable probability and foresee-

---

2. The opinion in *Westphal,* while informative, is not binding on this court. Moreover, the lan-

guage upon which Lakeview relies is dicta in the case.

ability of injury in Arizona from the action, Arizona's exercise of jurisdiction would not seem unexpected or unreasonable. Society has recognized that turning intoxicated drivers loose on the highways is no less dangerous. Defendants likewise should expect to be called to answer before an Arizona jury for its determination whether defendants' actions in overserving then releasing intoxicated drivers on Arizona's roads is negligent. The due process requirement is simply that the injuries "arise out of" or "relate to" actions that the defendants have purposefully directed toward residents of the forum state. *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (citing *Keeton*, 465 U.S. at 774, 104 S.Ct. 1473; *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868). We conclude that they did.

¶ 19 In this case, Lakeview's forum-related activities, such as soliciting in Arizona for Arizona residents to frequent its gambling and drinking establishment, knowing that they will drive on Arizona's public highways while returning home from the Casino, are sufficiently connected to the injuries caused by the Casino's negligent serving of intoxicating liquor to those Arizona residents to justify this court's exercise of personal jurisdiction. Plaintiffs' injuries can fairly be said to "arise out of or result from" allegedly tortious activities that Lakeview intentionally directed toward the forum. *Calder*, 465 U.S. at 789–90, 104 S.Ct. 1482. It was an active participant in causing an event to occur in Arizona, which should have put it on notice that it could be haled into an Arizona court to answer for its conduct.

 ¶ 20 Having determined that Lakeview has minimum contacts with Arizona, we must determine whether it is fair and reasonable to subject Lakeview to the jurisdiction of Arizona courts. *See Uberti,* 181 Ariz. at 575, 892 P.2d at 1364. Factors to consider include Lakeview's burdens in litigating here, Arizona's interest in resolving the action, and plaintiffs' interest in obtaining relief in Arizona. *See id.* On this issue, Lakeview bears the burden of establishing a "compelling case" that Arizona's assertion of jurisdiction is unreasonable. *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174; *see also Bils*

*v. Nixon, Hargrave, Devans & Doyle,* 179 Ariz. 523, 526, 880 P.2d 743, 746 (App.1994).

¶ 21 Lakeview has not claimed that it would be unreasonable to subject it to the jurisdiction of Arizona courts if minimum contacts are found to exist; nor has it asserted that litigation in Arizona would be unduly burdensome, that Arizona lacks a sufficient interest in resolving the action, or that plaintiffs' interest in obtaining relief in Arizona is insufficient to support jurisdiction. Because Lakeview has not established that jurisdiction in this state would be unreasonable, we hold that Arizona may constitutionally exercise personal jurisdiction over Lakeview. Traditional notions of fair play and substantial justice are not offended. *See Burger King,* 471 U.S. at 462, 105 S.Ct. 2174.

### Choice of Law

 ¶ 22 Lakeview asks us to address the choice-of-law issue, even though the trial court did not address it, on the ground that we must sustain the trial court's judgment dismissing the case on any theory framed by the pleadings and supported by the evidence. *See Coronado Co., Inc. v. Jacome's Dep't Store, Inc.,* 129 Ariz. 137, 139, 629 P.2d 553, 555 (App.1981). Lakeview asserts that we should nevertheless uphold the trial court's dismissal of the complaint because, even if Arizona courts have jurisdiction, Nevada law applies to this action, and Nevada law does not recognize plaintiffs' cause of action.

¶ 23 We find *Hoeller v. Riverside Resort Hotel,* 169 Ariz. 452, 820 P.2d 316 (App.1991), dispositive on this issue. There, as here, Nevada Casino employees allegedly served alcohol to an obviously intoxicated Arizona resident, then turned him loose to drive on Arizona's highways. *See id.* at 453, 820 P.2d at 317. Arizona motorists were injured when the intoxicated Arizona driver's vehicle crashed into their car on an Arizona highway. *See id.* After weighing the factors in the Restatement (Second) of Conflict of Laws, this court held that Arizona had a more significant relationship to the parties and the occurrence than did Nevada, and that Arizona law should therefore apply to the case. *See id.* at 458, 820 P.2d at 322 (citing Re-

statement (Second) of Conflict of Laws, §§ 6(2), 145, 146).

¶ 24 Defendants attempt to distinguish *Hoeller* on the ground that the *Hoeller* plaintiffs had not been to the defendant's Casino and had no contact with Nevada: They "were Arizona residents injured by an Arizona resident while driving on an Arizona highway." This court held, however, that they were "justified in expecting that their personal injury claims would be adjudicated under Arizona law." *Id.* at 457, 820 P.2d at 321. In this case, although the plaintiffs did have contact with Nevada, having traveled to defendants' Casino with the driver who later caused their injuries, they nevertheless were also "Arizona residents injured by an Arizona resident while [riding in a car] on an Arizona highway," and therefore they too were "justified in expecting that their personal injury claims would be adjudicated under Arizona law." *Id.* The fact that these Arizona residents were also returning from the Casino in Nevada does not change our analysis of the relevant Restatement factors or our determination that *Hoeller* applies. Indeed, it strengthens the analysis.

¶ 25 The Supreme Court of California reached a similar result in *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976).[3] In that case, California residents were allegedly overserved alcoholic beverages in a Nevada Harrah's Club Casino. While driving home from the casino, the California residents' car drifted across the center line of the California highway and collided head-on with Plaintiff Bernhard, who was riding a motorcycle. *See id.* 128 Cal. Rptr. 215, 546 P.2d at 720. There, as here, the casino owners asserted that Nevada law would preclude recovery. *See id.* As did this court in *Hoeller,* the California Supreme Court carefully analyzed the interests of each of the affected states in applying its laws to the occurrence. It concluded that California's interest should control:

Defendant by the course of its chosen commercial practice has put itself at the heart of California's regulatory interest, namely to prevent tavern keepers from selling alcoholic beverages to obviously intoxicated persons who are likely to act in California in the intoxicated state. It seems clear that California cannot reasonably effectuate its policy [of protecting California residents] if it does not extend its regulation to include out-of-state tavern keepers such as defendant who regularly and purposely sell intoxicating beverages to California residents in places and under conditions in which it is reasonably certain these residents will return to California and act therein while still in an intoxicated state. California's interest would be very significantly impaired if its policy were not applied to defendant.

Since the act of selling alcoholic beverages to obviously intoxicated persons is already proscribed in Nevada, the application of California's rule of civil liability would not impose an entirely new duty requiring the ability to distinguish between California residents and other patrons. Rather the imposition of such liability involves an increased economic exposure, which, at least for businesses which actively solicit extensive California patronage, is a foreseeable and covera[ble] business expense. Moreover, Nevada's interest in protecting its tavern keepers from civil liability of a boundless and unrestricted nature will not be significantly impaired when as in the instant case liability is imposed only on those tavern keepers who actively solicit California business.

*Id.* 128 Cal.Rptr. 215, 546 P.2d at 725 (footnote omitted). These reasons also militate in favor of the application of Arizona's law in the case before us. Arizona's interests in the safety of its highways and recovery for injured Arizona residents predominate over Nevada's interest in shielding Nevada casino owners from the consequences of overserving alcoholic beverages to obviously intoxicated patrons. Arizona's interests would be signif-

---

3. The case has been superseded by statute. *See Strang v. Cabrol,* 37 Cal.3d 720, 209 Cal.Rptr. 347, 691 P.2d 1013, 1014 (1984) (citing California Civil Code § 1714; California Business and Professional Code § 25602). Because Arizona does impose dramshop liability for serving obviously intoxicated persons, *see* A.R.S. § 4–311 (1995), the reasoning in *Bernhard* remains persuasive.

icantly impaired by the application of Nevada law to the case before us.

## CONCLUSION

¶ 26 For the foregoing reasons, we reverse the trial court's dismissal of the plaintiffs' complaint and remand for further proceedings consistent with this decision.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and SUSAN A. EHRLICH, Judge.