990 P.2d 1069

**Theresia GARCIA, a married woman, individually; and Angela Hatton, a minor by and through her parent and guardian, Theresia Garcia, Plaintiffs–Appellees,**

**v.**

**GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant–Appellant,**

**Phoenix Tabernacle of Latin America, an Arizona corporation, Defendant–Appellee.**

**Sarah Alvarado, a minor, by and through her parents and guardians John Alvarado and Guadalupe Alvarado; John Alvarado and Guadalupe Alvarado, husband and wife, individually; Guillermina Camacho, a minor by and through her parents, Guillermina G. Camacho and Antonio Camacho; Antonio Camacho and Guillermina G. Camacho, husband and wife, individually; Guadalupe Gallardo, a minor, by and through her parent and guardian Juan M. Gallardo; Juan M. Gallardo, individually; Phillip Daniel Garcia, a minor, by and through his parent and guardian, Deborah Garcia; Rachel Lydia Garcia, a minor, by and**

---

through her parent and guardian, Deborah Garcia; Deborah Garcia, individually; Lydia Martinez, a minor, by and through her parent and guardian Gloria Martinez; Gloria Martinez, individually, Plaintiffs–Appellees,

v.

General Motors Corporation, a Delaware corporation, Defendant–Appellant,

Phoenix Tabernacle of Latin America, an Arizona corporation, Defendant–Appellee.

Leticia Garcia, a married woman, Plaintiff–Appellee,

v.

General Motors Corporation, a Delaware corporation, Defendant–Appellant,

Phoenix Tabernacle of Latin America, an Arizona corporation, Defendant–Appellee.

No. 1 CA–CV 98–0249.

Court of Appeals of Arizona, Division 1, Department D.

May 6, 1999.

Reconsideration Denied June 29, 1999.

Review Denied Jan. 4, 2000.

Bowman & Brooke, L.L.P. by Jeffrey R. Brooke, Thomas M. Klein, Lori A. Zirkle, Phoenix, Attorneys for Defendant–Appellant General Motors Corp.

Rosenthal & Greene, P.C. by Elden M. Rosenthal, pro hac vice, Portland, Oregon, Attorneys for Plaintiffs–Appellees.

Hepworth, Nungester & Lezamiz by John C. Hepworth, pro hac vice, Twin Falls, Idaho, Attorneys for Plaintiffs–Appellees.

Robbins & Green, P.A. by Alfred W. Ricciardi, Phoenix, Attorney for Plaintiffs–Appellees.

Kern & Wooley, L.L.P. by Robert L. Greer, Mesa, Attorneys for Defendant–Appellee Tabernacle of Latin America.

## OPINION

BERCH, Judge.

¶ 1 Defendant General Motors Corporation appeals from an adverse jury verdict arising from a single-car rollover accident in Idaho. General Motors claims that the trial court erred in applying Idaho law, which precluded evidence that Plaintiffs were not wearing their seatbelts at the time of the accident. Because we find that choice-of-law principles dictate the application of Arizona comparative fault law to the facts of this case, we reverse and remand for a new trial.

## BACKGROUND

¶ 2 In 1993, Plaintiffs, all Arizona residents and members of a church group, rented a van from Defendant National Car Rental in Phoenix for a trip to a camp near Walla Walla, Washington. While passing through Idaho, the Arizona driver lost control of the van, which ran off the road and overturned. All of the passengers were injured in the accident. Although the van was fully equipped with functional seatbelts, none of the passengers was wearing a seatbelt at the time of the accident. As a result, most of the eleven passengers were ejected from the van.[1] Plaintiffs assert that the accident was caused by a design defect in the van, which was manufactured by Defendant General Motors.

¶ 3 Ilsy Echeverria, one of the passengers in the van, immediately sued General Motors and other defendants in the United States District Court for the District of Idaho. Applying Idaho state law, that court granted Echeverria's motion in limine to exclude all evidence that she failed to wear her seatbelt. The Idaho law provides that "[t]he failure to use a safety belt shall not be considered under any circumstances as evidence of contributory or comparative negligence, nor shall such failure be admissible as evidence in any civil action with regard to negligence." Idaho Code § 49–673(6). The court reasoned that Idaho law should apply because the accident occurred in Idaho and Plaintiff had a reasonable expectation that Idaho law would apply to conduct that occurred in that state. The court also noted that Idaho law should apply because of its "ease in determination and application." After this ruling but before trial, Echeverria settled with all of the defendants.

¶ 4 On August 16, 1995, the remaining passengers in the van filed lawsuits in Maricopa County Superior Court against Defendants General Motors, National Car Rental, and Phoenix Tabernacle. Plaintiffs moved to strike General Motors' use of the "seatbelt defense," arguing that the Idaho court's ruling on Echeverria's motion in limine bound

General Motors in this case, and regardless of the estoppel effect of the Idaho court's ruling, choice-of-law principles dictated that the court apply Idaho law rather than Arizona law to this case. General Motors responded, arguing that it should not be collaterally estopped from asserting the seatbelt defense because Arizona courts apply choice-of-law principles differently than Idaho courts do, and Plaintiffs' attempted use of collateral estoppel was offensive, not defensive, and therefore improper. The trial court struck General Motors' use of the seatbelt defense and affirmed that the Idaho rule would apply.

¶ 5 The jury returned a verdict for Plaintiffs against General Motors. The trial court denied General Motors' motion for a new trial and General Motors timely appealed, arguing that the trial court erred in applying Idaho law and striking the seatbelt defense. We have jurisdiction over this appeal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

## DISCUSSION

### I. Collateral Estoppel

¶ 6 Plaintiffs contend that the Idaho federal district court's ruling on the choice-of-law issue binds the Arizona courts in this case. They also claim that collateral estoppel bars General Motors from reasserting the seatbelt defense, an argument that it already fully and fairly litigated in Idaho, but lost. We review the availability of collateral estoppel *de novo*. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir.1988); *Baroldy v. Ortho Pharmaceutical Corp.*, 157 Ariz. 574, 578, 760 P.2d 574, 578 (App.1988) (legal issues are reviewed *de novo*).

¶ 7 Plaintiffs correctly assert that federal law, the law of the forum to first decide the issue, governs the effect to be given the Idaho federal court ruling. *See Marrese v. American Academy of Ortho. Surgeons*, 470 U.S. 373, 375, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). *See generally* Howard M. Erichson,

---

1. In its opening brief, General Motors stated that nine passengers were ejected. In their response, Plaintiffs claimed that eight were ejected.

*Interjurisdictional Preclusion,* 96 Mich. L.Rev. 945 (1998) (noting that courts should apply the preclusion doctrines of the court that rendered the judgment at issue). In this case, the first court was the federal district court in Idaho. Although it is unclear on which law the trial court relied, the result would be the same under either Arizona or federal law.

¶ 8 Plaintiffs also assert, and the trial court agreed, that their application of collateral estoppel was defensive and therefore proper. The answer to this question may depend on whether we apply federal or Arizona law. *Compare Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), *with Food for Health Co., Inc. v. 3839 Joint Venture,* 129 Ariz. 103, 105, 628 P.2d 986, 988 (App.1981).[2] We need not decide this issue, however, because we conclude that whether the Idaho ruling was offensive or defensive, the Idaho court's decision is not entitled to collateral estoppel consequences, and thus the Arizona courts are not bound by it.

¶ 9 For collateral estoppel to apply, (1) the issue must have been actually litigated in a previous proceeding, (2) the parties must have had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits must have been entered, (4) resolution of the issue must be essential to the decision, and (5) there must be common identity of the parties. *See Collins v. Miller & Miller, Ltd.,* 189 Ariz. 387, 397, 943 P.2d 747, 757 (App.1996); *see also In re Evans,* 161 B.R. 474, 477 (B.A.P. 9th Cir.1993) (federal elements virtually the same). We conclude that, because the previous court ruled *in limine* on the seatbelt issue and the case settled before the final judgment, elements (3) and (4) are not met as to this issue and collateral estoppel therefore does not apply.[3]

¶ 10 The parties have cited us to no cases, and we have found none, in which a motion in limine is accorded collateral estoppel consequences when parties settle a case before trial. The critical inquiries in determining whether estoppel should apply are whether the *in limine* ruling was sufficiently final to be entitled to collateral estoppel effect and whether the ruling was "essential" to the court's decision. Whether a ruling is essential must be determined on a case-by-case basis. A consent judgment based on the parties' agreement to settle renders rulings on underlying discovery and evidentiary motions, while perhaps an impetus to the parties in deciding whether to settle, unlikely to be essential to the ultimate judgment in the case. In this case, for example, either the Plaintiff or General

**2.** *Parklane's* famous footnote 4 defines offensive and defensive use of collateral estoppel:

[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.

439 U.S at 326 n. 4, 99 S.Ct. 645. Under the *Parklane* analysis, the attempted use of collateral estoppel in this case would be offensive and might well be found to be improper because the Plaintiffs are represented by the same counsel who represented Ilsy Echeverria in the Idaho suit, and all Plaintiffs could easily have been joined in that lawsuit, but were not. *See id.* at 331, 99 S.Ct. 645. Moreover, attempted offensive use of estoppel such as occurred in this case unfairly allows a plaintiff to sit on the sidelines of the earlier adjudication and to "wait and see" how it turns out. *Id.* at 330, 99 S.Ct. 645. If the first plaintiff wins, the second plaintiff can rely

on the previous judgment against the defendant; but if the first plaintiff loses, the second plaintiff is not bound. *See id.* The Supreme Court has reasoned that such offensive use of collateral estoppel should not be allowed: "Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." *Id.*

Although the use of collateral estoppel might be found to be defensive under the analysis set forth in *Food for Health,* 129 Ariz. at 105, 628 P.2d at 988, we need not reach that issue, for we conclude that federal law controls this inquiry. In addition, we decide this case on other grounds.

**3.** Nor is the fifth element, common identity of the parties, fully met: the Plaintiffs here were not parties to the Idaho lawsuit. Because offensive use of collateral estoppel is now allowed in many instances, however, complete common identity of the parties is no longer required. *See Parklane,* 439 U.S. at 322, 99 S.Ct. 645.

Motors could have prevailed in the lawsuit even if the *in limine* motion had been decided differently, for whether General Motors negligently designed its vans is only peripherally related to whether Ms. Echeverria was wearing her seatbelt. Seatbelt use goes only to the apportionment of fault for purposes of determining damages; the failure to wear a seatbelt does not make one a cause of an accident. *See Law v. Superior Court,* 157 Ariz. 147, 155, 755 P.2d 1135, 1143 (1988). Because the ruling *in limine* was not essential to the judgment in the Idaho suit, it is not entitled to preclusive effect in this subsequent suit.

¶ 11 Nor did the Idaho court's *in limine* ruling contain the requisite finality. For collateral estoppel purposes, a final judgment may include "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Elia v. Pifer,* 194 Ariz. 74, ¶ 33, 977 P.2d 796, ¶ 33, (App.1998) (quoting Restatement (Second) of Judgments § 13 (1982)); *Robi,* 838 F.2d at 327. *But see State v. Schallock,* 189 Ariz. 250, 255, 941 P.2d 1275, 1280 (1997) (jury's verdict not sufficiently final to support application of collateral estoppel; a judgment is required). Factors for determining whether a ruling is sufficiently final include the nature of the decision, the adequacy of the hearing, and the opportunity for review. *See Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961); *Elia,* 194 Ariz. 74 ¶¶ 32–34, 977 P.2d 796 ¶¶ 32–34 (quoting Restatement (Second) of Judgments § 13 cmt. a, and holding that a final judgment for purposes of collateral estoppel need not necessarily be an appealable judgment as long as it is reviewable by an appellate tribunal at that stage).

¶ 12 Although the choice-of-law ruling here was *in limine,* it nonetheless was not tentative in the context of the litigation. *See* Restatement § 13 cmt. g. Although some *in limine* rulings are subject to change in response to circumstances that develop at trial, this ruling was not based on developing facts and therefore was unlikely to change. We conclude, however, that the lack of opportunity for appellate review of the Idaho court's

ruling precludes the application of collateral estoppel in this case. In so holding, we distinguish this court's decision in *Elia,* 194 Ariz. 74 ¶¶ 32–34, 977 P.2d 796 ¶¶ 32–34. In that case, the contempt order at issue was final and reviewable by special action; it simply was not appealable. The motion *in limine* at issue in this case was neither independently reviewable nor appealable.

¶ 13 Several courts, including those relied on by the Plaintiffs, have allowed the use of collateral estoppel to bar relitigation of an issue decided on summary judgment in an earlier suit that settled before an appeal could be taken. *See, e.g., Bates v. Union Oil Co.,* 944 F.2d 647, 651 (9th Cir.1991) (holding that by settling and not pursuing appeal, the party assumed the risk that the judgment would have preclusive effect in future litigation); *Siemens Med. Sys., Inc. v. Nuclear Cardiology Sys.,* 945 F.Supp. 1421, 1436 (D.Colo.1996) (holding that settlement did not avoid preclusive effect of summary judgment when defendant could have appealed but settled); *Carpenter v. Young,* 773 P.2d 561, 568 (Colo.1989) (applying collateral estoppel to prior summary judgment order because order was subject to appeal before the case settled). These courts all found that the party against whom the judgment was used in future litigation had waived its right to appellate review of the decision by settling.

¶ 14 Two related factors in this case lead us to a different conclusion. First, all of the cases cited by Plaintiffs and all those that we found holding that a settlement did not preclude the application of collateral estoppel involve situations in which the issue was at some point appealable. *See, e.g., Siemens,* 945 F.Supp. at 1436; *Carpenter,* 773 P.2d at 568. If collateral estoppel were to apply in this case, the Idaho court's *in limine* ruling would be effectively shielded from appellate review because it was not independently appealable. *See* 28 U.S.C. § 1291. Plaintiffs' talismanic invocation of the virtues of finality of judgments and judicial economy should not be allowed to obscure the great risk that too hasty an application of collateral estoppel can prevent review and perpetuate error.

¶ 15 Second, and perhaps more significant, is that applying collateral estoppel in this

**516**

case might greatly hinder future settlements. Parties in General Motors' position would have less incentive to settle claims by one plaintiff in a multi-plaintiff lawsuit if they felt that interlocutory rulings would bind them in future cases arising from the same incident. *See Siemens,* 945 F.Supp. at 1437 (noting that parties who will be most discouraged from settling "will be those who fear future, related liability based on negative partial summary judgment orders"). By settling early in the lawsuit and before trial, General Motors conserved significant judicial resources; indeed probably more resources were saved than would have been expended by simply relitigating the choice-of-law issue below.

¶ 16 A third factor that supports our conclusion is that nothing in the settlement agreement in the underlying Idaho case suggests that General Motors conceded any issues relating to the litigation. *See Chaney Bldg. Co. v. City of Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986) (finding no preclusive effect of prior stipulated judgment when intention to be bound was not apparent by the dismissal). On the contrary, the release entered into by General Motors and Echeverria specifically stated that "[i]t is understood and agreed that this settlement is a compromise of a doubtful and disputed claim ... and [the parties] intend merely to avoid further litigation and buy their peace." In these circumstances, we conclude that the application of collateral estoppel would discourage parties from settling early in the litigation for fear of the repercussions of settlement.

¶ 17 Finally, we are troubled by the application of collateral estoppel to this case because of the potential differences between Idaho and Arizona courts in analyzing choice-of-law issues.[4] We note that Plaintiffs are represented by the same Idaho counsel who represented Echeverria in the Idaho case.

Although we do not know counsel's reasons for filing separate lawsuits in different forums on behalf of passengers involved in the same accident, this case highlights a problematic result of applying collateral estoppel: encouraging forum-shopping. One plaintiff in a multi-party case could first bring suit in the forum most likely to give a favorable choice-of-law ruling; then counsel could attempt to use that ruling offensively in a subsequent suit to estop the defendant from raising a defense in another forum. Whether that was intended in this case, we do not decide, but we will not encourage the potential for such conduct. *See Parklane Hosiery,* 439 U.S. at 330–31, 99 S.Ct. 645 (discussing policies for precluding offensive collateral estoppel); *Rayco Mfg. Co. v. Chicopee Mfg. Corp.,* 148 F.Supp. 588, 592–93 (S.D.N.Y. 1957) (discussing forum shopping).

¶ 18 For all of the foregoing reasons, we conclude that the Idaho court's *in limine* order does not carry collateral estoppel consequences.

## II. Choice–of–Law

■ ¶ 19 Because we find that the Idaho court's decision to apply Idaho law does not bind this court, we must decide whether Arizona or Idaho law governs the seatbelt use issue in this case. Arizona law allows the jury to consider nonuse of a seatbelt in determining damages. *See Law,* 157 Ariz. at 157, 755 P.2d at 1145. Idaho, on the other hand, specifically precludes the admission of such evidence. *See* Idaho Code § 49–673(6). Choice-of-law issues are questions of law, which we review *de novo. See Baroldy,* 157 Ariz. at 578, 760 P.2d at 578.

■ ¶ 20 Which forum's law applies to a particular issue depends on which forum has the most significant relationship to the issue. *See Schwartz v. Schwartz,* 103 Ariz. 562, 565,

---

4. General Motors notes in its response brief that both Arizona and Idaho apply the Restatement (Second) of Conflict of Laws when resolving choice-of-law questions. Although this is true, the case law suggests that the respective jurisdictions emphasize the factors differently. *Compare Seubert Excavators, Inc. v. Anderson Logging Co.,* 126 Idaho 648, 889 P.2d 82, 85 (1995) ("[T]he most important [of the Restatement contacts] in guiding this Court's past decisions in tort cases has been the place where the injury occurred.") *with Ambrose v. Illinois–California Express, Inc.,* 151 Ariz. 527, 530, 729 P.2d 331, 334 (App.1986) (finding little significance in place of injury when the accident occurred in Arizona but neither plaintiffs nor defendants were residents of Arizona). *See infra* ¶¶ 19–36.

447 P.2d 254, 257 (1968) (rejecting the doctrine of *lex loci delicti* and adopting the "most significant relationship" theory of the Restatement (Second) of Conflict of Laws (1971)), *overruled on other grounds, Fernandez v. Romo*, 132 Ariz. 447, 646 P.2d 878 (1982). To determine which state has the most significant relationship to the comparative fault issue in this case, we look first to the Restatement section governing personal injury cases, which directs us initially to the law of the place where the accident occurred:

> In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146. But while section 146 initially suggests the application of the Idaho law, we still must consider whether Arizona has a more significant relationship to the parties and the issue than does Idaho. *See, e.g., Hoeller v. Riverside Resort Hotel*, 169 Ariz. 452, 455, 820 P.2d 316, 319 (App.1991). To answer this question, we consider the general principles embodied in Restatement (Second) of Conflict of Laws section 145(2), which requires us to analyze

(1) the place where the injury occurred;

(2) the place where the conduct causing the injury occurred;

(3) the domicil, residence, nationality, place of incorporation and place of business of the parties; and

(4) the place where the relationship, if any, between the parties is centered.

*Bates v. Superior Court*, 156 Ariz. 46, 49, 749 P.2d 1367, 1370 (1988); *Bryant v. Silverman*, 146 Ariz. 41, 44, 703 P.2d 1190, 1193 (1985).[5]

¶ 21 Two of the section 145 contacts favor applying Arizona law. First, the parties' relationship is centered in Arizona. Plaintiffs rented the van in Arizona, began their trip in Arizona, and intended to return to Arizona. Second, all Plaintiffs are Arizona residents, Defendant National Car Rental is incorporated and conducts business in Arizona, and General Motors, a national corporation, does business in every state, including Idaho and Arizona. *See Bates*, 156 Ariz. at 50, 749 P.2d at 1371. Arizona courts traditionally have accorded great weight in the conflicts analysis to the domicile of the tort victim in a personal injury case. *See id.* A third contact, the place where the conduct occurred, favors neither Arizona nor Idaho. This was a products liability case and, according to Plaintiffs' theory of the case against General Motors, the "conduct causing the accident" arguably occurred in Michigan, where the van was manufactured.

¶ 22 Thus, the only section 145 contact that favors applying Idaho law is that it was the place of injury. This factor, however, loses significance if the place of injury is merely fortuitous. *See* Restatement § 145 cmt. e. Indeed, several courts have chosen not to apply the law of a state if that state's only contact was that the accident just happened to occur there. *See, e.g., Baroldy*, 157 Ariz. at 579, 760 P.2d at 579 (holding that manifestation of toxic shock syndrome in North Carolina from defective diaphragm was merely fortuitous because "Plaintiffs could have duplicated their relationship with [defendant] anywhere"); *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13, 25–26 (1986) ("[Courts] should disregard the law of a foreign jurisdiction that has at best a fortuitous and incidental relationship to the controversy to be adjudicated."); *Stallworth v. Hospitality Rentals, Inc.*, 515 So.2d 413, 416–17 (Fla. Ct.App.1987) (that rental car accident oc-

5. Plaintiffs urge us to also consider Restatement section 164, which governs issues of contributory and comparative fault. *See* Restatement (Second) of Conflict of Laws § 164 cmts. a & d. Arizona has not specifically adopted this section, but even if we were to apply section 164, our analysis would not change. Section 164 merely provides that choice-of-law questions involving comparative fault are answered by applying sec- tion 145. That section 164, comment b, dictates the application of local law *unless* another state "has a more significant relationship" to the matter does not change the analysis and adds nothing to it: We are left with the task of determining whether Arizona's relationship to the parties and the *occurrence is more significant than Idaho's* relationship.

curred in Louisiana, as opposed to any other state, was "pure happenstance," and thus the place of injury had little significance insofar as the rental company's vicarious liability was concerned); *Patten v. General Motors Corp.*, 699 F.Supp. 1500, 1508 (W.D.Okla. 1987) (applying Oklahoma law to products liability action when fact that accident occurred in Colorado was "a mere fortuity").

¶ 23 Although the section 145 factors support the application of Arizona law, the choice-of-law issue is qualitative, not quantitative, and we must look further into the weight to be accorded each contact in light of the circumstances of this case. *See Bryant*, 146 Ariz. at 45, 703 P.2d at 1194. Despite Idaho's relatively inconsequential relationship to the accident other than its chance occurrence there, Idaho nonetheless may have an interest in applying its law, an interest that we must weigh against Arizona's interests in the matter. In doing so, we must view the section 145 contacts in light of the principles of Restatement (Second) of Conflict of Laws section 6, which include (1) the needs of the interstate and international systems, (2) the relevant policies and interests of the competing forums, (3) the protection of justified expectations, (4) the basic policies underlying the field of law, (5) the certainty, predictability, and uniformity of result, and (6) the ease of determining and applying the law of the particular forum. *See Hoeller*, 169 Ariz. at 454–55, 820 P.2d at 318–19.

¶ 24 Two section 6 factors demonstrate Idaho's connection with the lawsuit. First, both the Idaho court and the trial court here relied, in part, on the reasonable expectations of the passengers: They assumed that the passengers might expect Idaho law to govern an accident occurring in Idaho. We disagree with the emphasis the trial court placed on the parties' expectations regarding the applicable traffic laws. The "justifiable expectations" factor applies where parties consciously mold their conduct to conform to the law of a particular forum. *See* Restatement § 6 cmt. g; *Bryant*, 146 Ariz. at 46, 703 P.2d at 1195 ("predictability and uniformity of result are of greatest importance when parties are likely to give ad-

vance thought to the legal consequences of their transactions, such as the effect and validity of contracts or wills, and not when negligence is at issue"). Thus, the "justifiable expectations" factor has marginal significance here, when Plaintiffs probably gave little thought to the comparative fault law to be applied in the event of an accident. Our supreme court has recognized that in negligence actions, the parties have no justified expectations to protect, and this factor is largely irrelevant in deciding choice-of-law questions. *See Bryant*, 146 Ariz. at 46, 703 P.2d at 1195 (citing *Gordon v. Kramer*, 124 Ariz. 442, 604 P.2d 1153 (App.1980)). Accordingly, we give that factor very little weight in our analysis.

¶ 25 Plaintiffs contend, however, that "Arizona has no legitimate interest in ensuring safe driving and safe vehicles on Idaho's highways." While that is true, ensuring safe driving is not the relevant interest at stake in a products liability action such as this one. Plaintiffs' theory is not that there was unsafe driving, but rather that the van was defective. The relevant state interests thus deal with determining appropriate compensation of tort victims.

¶ 26 Second, the trial court relied on the goals of promoting predictability and uniform results, noting that "one of the occupants of the vehicle has already filed suit in the Idaho courts and the result as to all plaintiffs ... should not differ." We reject the emphasis placed on this factor for many of the same reasons that we reject the application of collateral estoppel in this case. Although one of the policies behind this factor is to discourage forum shopping, *see* Restatement (Second) of Conflict of Laws section 6 cmt. i, we have noted that forum shopping may actually be encouraged in this case by applying Idaho law. *See Guaranty Trust*, 326 U.S. at 112, 65 S.Ct. 1464; *Rayco Mfg.*, 148 F.Supp. at 592–93. Further, this factor loses importance when considering negligence issues, if parties are unlikely to "give advance thought to the legal consequences of their transactions...." *Bryant*, 146 Ariz. at 46, 703 P.2d at 1195; *see also* Restatement (Second) of Conflict of Laws § 6 cmt. i.

¶ 27 Two other section 6 factors are relatively insignificant to our analysis. First, the needs of the interstate system will not be significantly hindered or advanced by the application of either state's law. *See Baroldy*, 157 Ariz. at 580, 760 P.2d at 580; *Hoeller*, 169 Ariz. at 456, 820 P.2d at 320. Second, we believe that an Arizona court could apply either Arizona or Idaho law in this case with equal ease. *See Hoeller*, 169 Ariz. at 455–56, 820 P.2d at 319–20.

¶ 28 Section 6 also directs that we examine "the basic policies underlying the particular field of law." Restatement (Second) of Conflict of Laws § 6(2)(e). It suggests that these policies play a heightened role when "the policies of the interested states are largely the same but where there are nevertheless minor differences between [the laws]." *Id.* § 6 cmt. h. Here, as far as we have been able to ascertain, Idaho and Arizona have similar reasons for imposing liability on those who negligently design or manufacture products. *See Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976); *Jimenez v. Sears, Roebuck and Co.*, 183 Ariz. 399, 904 P.2d 861 (1995). Arizona's and Idaho's treatment of seatbelt use also shares at least two compelling similarities: neither state discourages the use of seatbelts and both compel seatbelt use in some situations, such as for the very young, *see* A.R.S. section 28–907 (1998); Idaho Code section 49–672, or for front-seat passengers.[6] *See* A.R.S. § 28–909 (1998) (applies to vehicles carrying ten or fewer passengers); Idaho Code § 49–673(1). Only to the extent that Arizona permits its juries to consider on the issue of damages a party's failure to use a seatbelt, and Idaho does not, do the states' policies differ.

¶ 29 Idaho justifies its policy as allowing full recovery for Plaintiffs. Arizona has specifically rejected the view of maximizing recovery at all costs in favor of allowing a party to recover only for damages caused by another, and not for damages he himself has caused. As our supreme court explained, "although some tortfeasors may pay less than they otherwise *would*, they will not pay less than they *should*." *Law*, 157 Ariz. at 156, 755 P.2d at 1144. It seems incongruous to allow Idaho's desire to "fully" compensate nonresident Arizona plaintiffs to control in an Arizona court, when Arizona courts would permit the jury to consider whether to reduce the recovery of Arizona plaintiffs who fail to wear seatbelts. This section 6 factor, which the Restatement directs us to weigh heavily, tips the scales in favor of the application of Arizona law.

¶ 30 Finally, section 6 directs us to weigh the relevant policies and interests of the competing forums. Arizona's interests in allowing evidence of Plaintiffs' failure to use seatbelts were discussed briefly above, and are more fully developed in our supreme court's opinion in *Law*. In *Law*, the Arizona Supreme Court held that a jury may consider the "seatbelt defense" in apportioning damages based on the "fault" of the plaintiff in failing to reduce those damages. *Id.* at 157, 755 P.2d at 1145. In so holding, the court not only recognized the state's interest in encouraging seatbelt use, but emphasized the public policy that "every person anticipate and take reasonable measures to guard against the danger of motor vehicle accidents that are not only foreseeable but virtually certain to occur sooner or later." *Id.* at 152, 755 P.2d at 1140. Arizona has an interest in encouraging its residents to wear seatbelts even outside its borders, as injuries resulting from not using seatbelts may well require medical care upon the residents' return to Arizona, precisely as they did in this case.

¶ 31 Arizona has other interests as well. Plaintiffs' doctors, nurses, rehabilitation specialists, and other medical specialists, as well

---

**6.** Plaintiffs also point out that neither Idaho nor Arizona law requires passengers in large vans to wear seatbelts. From this, they argue that "Arizona courts should not ... punish[ ]" passengers for not wearing seatbelts. Our supreme court dealt with this issue in *Law*, 157 Ariz. at 152–57, 755 P.2d at 1140–45. It held that while there is no statutory or common law duty to wear a seatbelt, the jury may consider, in determining appropriate damages, a party's comparative fault in failing to protect him- or herself from clearly foreseeable injuries by failing to wear a seatbelt. Comparative fault may arise in numerous situations in which laws are not violated. Moreover, we note that while neither state requires all passengers to wear seatbelts, neither state forbids them from using readily available seatbelts. Arizona's policy simply encourages such use.

as health care records, insurance policies, and family and other witnesses are located in Arizona.[7] And should Plaintiffs need benefits to sustain them through the rehabilitation and mending period, Arizona would provide that assistance. These facts support the application of Arizona law.

¶ 32 Idaho's interest in applying its law, on the other hand, is to protect Plaintiffs from under-recovery because they did not anticipate General Motors' conduct in manufacturing a van in Detroit. *See Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187, 1208–09 (1986) (noting that the reason for the seatbelt gag rule is "the lack of connection between failure to wear a seatbelt and the occurrence of the accident"). Idaho, however, has little interest in ensuring full compensation for nonresident plaintiffs or maximizing damages against nonresident defendants. *See Bryant,* 146 Ariz. at 47, 703 P.2d at 1196; *O'Connor,* 519 A.2d at 24 ("The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there.").

¶ 33 Plaintiffs also urge that Idaho has an interest in discouraging tortious conduct, by "requiring [General Motors] to pay full damages to the plaintiffs." Although we agree that Idaho has this interest, we do not agree with Plaintiffs as to the extent this interest will be furthered by applying Idaho law rather than Arizona law. *See O'Connor,* 519 A.2d at 23 ("Limitations on damages ... have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated.") (quoting *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727, 731 (1967)). Moreover, given that General Motors does extensive business in every state, it is unrealistic to believe that General Motors will tailor its conduct to the law of a specific state.

¶ 34 We are thus faced with a situation in which the Plaintiffs live in Arizona, rented a General Motors van in Arizona, intended to return to Arizona after their short trip, and were injured in a single-car accident in Ida-

ho. No Idaho residents were involved. Therefore, Idaho's connection with the case arose "solely because the accident occurred on its ... highways." *Ambrose v. Illinois–California Express, Inc.,* 151 Ariz. 527, 531, 729 P.2d 331, 335 (App.1986). Given these facts, we conclude that choice-of-law principles strongly favor the application of Arizona law on the issue of seatbelt use.

¶ 35 We note the irony that occurs in this case by applying Arizona law: Arizona plaintiffs may actually receive less compensation than they might have if the court were to apply Idaho law. However, Arizona has specifically weighed the competing interests between maximizing plaintiffs' recovery and encouraging seatbelt usage among its citizens and has determined that evidence of seatbelt usage is admissible in products liability cases to ensure that plaintiffs recover as much in damages as they should recover, but not more. *See Law,* 157 Ariz. at 149–57, 755 P.2d at 1137–45. Arizona has a strong interest in applying this policy to its residents, even if they are injured in an out-of-state accident, as they will continue to reside within its boundaries. This interest outweighs any tangential interest Idaho may have in applying its law to nonresident parties.

¶ 36 Accordingly, Arizona has the most significant relationship to the issue of seatbelt use in this case, and Arizona law should apply on this issue.

## CONCLUSION

¶ 37 The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and THOMAS C. KLEINSCHMIDT, Judge.

---

7. We note that there· may also be initial health-care providers and records in Idaho, but the record before us does not indicate whether any

Idaho health-care providers remain uncompensated.