2017 UT App 234

# THE UTAH COURT OF APPEALS

AUSTIN G. HEYWOOD JR.,
Petitioner,

*v.*

DEPARTMENT OF COMMERCE, DIVISION OF REAL ESTATE,
Respondent.

Opinion
No. 20160289-CA
Filed December 21, 2017

Original Proceeding in this Court

Harold L. Reiser and Adam H. Reiser, Attorneys
for Petitioner

Sean D. Reyes and Brent A. Burnett, Attorneys
for Respondent

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1    In 2006, a bankruptcy court found that Austin G. Heywood Jr., a real estate agent, committed fraud by concealing a bona fide purchase offer from his client so that he could force a short sale of the property to his own investment group (the 2006 transaction). Several years later, in November 2014, Heywood submitted an application to the Utah Department of Commerce, Division of Real Estate (the Division) to renew his license as a real estate sales agent. In light of the bankruptcy court's finding, the Division found that Heywood did not demonstrate the "honesty, integrity, truthfulness, reputation, and competency" required for renewal and denied his renewal application. After exhausting his administrative review options, Heywood now petitions this court to review the denial of his license. We decline to disturb the Division's decision.

BACKGROUND

*The 2006 Transaction*

¶2     In 2006, Heywood acted as a real estate agent for a client who wanted to sell her home. The client was delinquent on her mortgage payments and had been unsuccessful in finding a buyer. Heywood told the client that he knew of a group of short-sale investors who were interested in purchasing her home. Heywood did not disclose that he had a personal interest in this group of investors, which included Heywood and his spouse.

¶3     In March 2006, Heywood listed the client's property as under contract, although no offer had been made at that time. The house was ultimately sold to Heywood's investment group for $352,000—a price below its appraised value of $380,000. Prior to the short sale, Heywood had received an offer from another buyer to purchase the property for $441,000, but he did not disclose the offer to the client or her lenders. The same day that the investment group purchased the property, Heywood resold it to the other buyer for a substantial profit.

*The Bankruptcy Proceedings*

¶4     Shortly after the 2006 transaction, the client filed a petition for relief under chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Utah. The bankruptcy trustee eventually brought several causes of action against Heywood, including a claim for common law fraud. Heywood was represented by counsel and had the opportunity to present evidence during a five-day bench trial.

¶5     Following briefing and oral argument, the bankruptcy court entered a memorandum decision in July 2009 (the 2009 Memorandum Decision), concluding that Heywood was liable to the bankruptcy estate under common law fraud because his conduct was "intentionally fraudulent or manifested a knowing

and reckless indifference toward and disregard of [the client's] rights."

¶6     Heywood did not appeal the bankruptcy court's findings of fact and conclusions of law. Instead, he elected to enter into a settlement agreement with the bankruptcy trustee. Heywood agreed to pay damages to the trustee in exchange for the trustee releasing Heywood from "all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, or judgments of any kind or character whatsoever" arising out of the client's bankruptcy estate. The bankruptcy court approved the settlement agreement and then dismissed the case against Heywood. In doing so, the bankruptcy court did not vacate the 2009 Memorandum Decision.

*Licensing and Disciplinary Proceedings before the Division*

¶7     In November 2009, the Division received a complaint about Heywood's conduct during the 2006 transaction. The Division notified Heywood that it had initiated an investigation.

¶8     In 2010, Heywood applied for and was issued a renewed license. In his license renewal application, Heywood disclosed that the Division was conducting an investigation into the 2006 transaction.

¶9     In 2012, Heywood again applied for and was issued a renewed license. In completing his online application, Heywood did not disclose that the Division's investigation was still ongoing.

¶10     On the same day Heywood renewed his license online, the Division filed a notice of agency action and petition, initiating a disciplinary proceeding against Heywood to revoke his license. A year later, the parties stipulated to the dismissal of the disciplinary action to allow for further review and investigation.

¶11    In 2014, Heywood submitted another license renewal application. This time, the Division denied his application. Heywood subsequently filed a request for agency review.

*Review by the Utah Real Estate Commission*

¶12    On review, Heywood moved for summary disposition, arguing that the doctrine of laches applied because the Division unreasonably delayed taking action against him. The Presiding Officer of the Utah Real Estate Commission found that the doctrine of laches was inapplicable in an administrative context and, in any event, the passage of time in this case could not "be considered unreasonable or prejudicial, particularly where [Heywood] was at all times on notice of the investigation and was allowed to work on an unrestricted license."

¶13    The Presiding Officer then granted the Division's motion in limine to give preclusive effect to the 2009 Memorandum Decision. Heywood argued that the doctrine of issue preclusion did not apply because the 2009 Memorandum Decision, which left open the calculation of punitive damages, expressly stated that it was not a final judgment. Nevertheless, the Presiding Officer ruled that the 2009 Memorandum Decision became final as soon as "the 30-day deadline by which the trustee was required to request further hearing [on punitive damages] passed." As the Presiding Officer noted, Heywood elected to settle the amount of damages owed to the estate rather than preserve his right to appeal. The Presiding Officer concluded that the parties did not stipulate to vacatur of the 2009 Memorandum Decision as part of the settlement, nor did the bankruptcy court vacate its prior decision when it dismissed the case.

¶14    Following a hearing, the Presiding Officer entered a written order affirming the Division's decision to deny Heywood's 2014 license renewal application. The Presiding Officer based the decision not only on the 2006 transaction but

also on Heywood's lack of remorse and refusal to take responsibility for his conduct. Heywood "repeatedly attempted to defend the deal in its entirety" and "claimed he made full and appropriate disclosures." He refused to acknowledge any wrongdoing and instead criticized the Division for not pursuing its concerns earlier. The Presiding Officer found that Heywood "does not appear to realize just how egregious his conduct was, despite having years to reflect upon it," and that under those circumstances he "cannot be trusted to act in the public interest under a real estate license." In addition to denying Heywood's license renewal, the Presiding Officer ruled that he "may not reapply for a license with the Division for at least three years from the date of this order." Following this decision, Heywood filed a request for further administrative review.

### *Review by the Department of Commerce*

¶15 On review to the Department of Commerce, Heywood raised, among other things, the same three issues presented on judicial review: (1) whether the doctrine of laches barred the Division's denial of his license, (2) whether the Presiding Officer properly considered the 2009 Memorandum Decision, and (3) whether the three-year ban on applying for license renewal was unconstitutionally excessive. As to the third issue, which was not supported by "any legal authority or analysis," the Executive Director of the Department of Commerce ruled that Heywood had failed to "meet the briefing requirements" and declined to consider that challenge.

¶16 The Executive Director rejected Heywood's arguments regarding laches and the preclusive effect of the 2009 Memorandum Decision. First, the Executive Director agreed that, even if the doctrine of laches could apply to a disciplinary proceeding where the agency is acting to protect public welfare, the renewal was not a disciplinary proceeding but a request for agency action initiated by Heywood. The Executive Director also

concluded that Heywood had not suffered any prejudice as a result of the Division's failure to pursue the disciplinary action. Second, the Executive Director agreed that the 2009 Memorandum Decision was final and that the Presiding Officer properly considered the bankruptcy court's findings of fraud in denying Heywood's 2014 license renewal application. Heywood filed a request for judicial review.

ISSUES AND STANDARDS OF REVIEW

¶17    Heywood asks this court to review three issues, two of which we address on the merits. First, Heywood claims that the denial of his license was untimely and should be barred by the doctrine of laches. Second, he argues that he should not have been precluded from challenging the findings made in the 2009 Memorandum Decision because it was not a final order. Both of these legal issues were raised below and addressed in the Executive Director's order. We review an administrative agency's legal decisions for correctness, giving no deference to the agency. *Hughes Gen. Contractors, Inc. v. Utah Labor Comm'n*, 2014 UT 3, ¶ 25, 322 P.3d 712.

¶18    Heywood's third issue is whether the Division "abused its discretion by imposing an unreasonably harsh penalty upon [him] in barring him from reapplication until 2018." While Heywood attempted to raise this issue below, the Executive Director declined to consider it due to Heywood's inadequate briefing. To obtain judicial review, petitioners must "appropriately address their opening brief and arguments to the Executive Director's final order." *Utah Physicians for a Healthy Env't v. Executive Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 16, 391 P.3d 148. Here, Heywood does not challenge the Executive Director's refusal to reach the merits but instead takes issue with the Presiding Officer's initial decision to impose the three-year ban. Because Heywood does not attack the basis for

the Executive Director's order, we do not reach the merits of this issue.

ANALYSIS

I. Timeliness

¶19 Heywood argues that the Division's denial of his license is an "untimely licensing action" and should be barred by the doctrine of laches.[1] In making this argument, Heywood draws no distinction between the dismissed disciplinary action initiated by the Division and the 2014 licensing renewal application initiated by Heywood. He argues that characterizing the disciplinary proceeding and the license renewal as separate actions is "strictly semantics," because the denial of his license renewal ultimately produced the same sanction that would have resulted from the dismissed disciplinary action—revocation of his real estate license. But disciplinary proceedings and denial of a renewal application are distinct agency actions.

¶20 Disciplinary proceedings are governed by sections 61-2f-401 to -410 of the Utah Code. While a disciplinary proceeding may result in the revocation of a license, other civil penalties can be assessed as well, including a fine of up to $5,000 per violation or the amount of any gain or economic benefit derived from each violation. *See* Utah Code Ann. § 61-2f-407 (LexisNexis 2011).

---

1. In his opening brief, Heywood makes an alternative argument that "the Division's denial of Heywood's license fails its own standards for timeliness pursuant to Utah Administrative Code Rule 151-4-108." Because this argument was not raised in the administrative proceedings, we do not separately address it except to note that it rests on the same mistaken assumption that the disciplinary action that was later dismissed and the 2014 licensing renewal application were the same "agency action."

¶21 On the other hand, license renewal is governed by sections 61-2f-201 to -208 of the Utah Code. Unlike a disciplinary action initiated by the Division, a renewal request is triggered by the licensee's application. An applicant is not automatically entitled to renewal and the Division must consider the honesty, integrity, truthfulness, reputation, and competency of the applicant before granting the renewal. *See* Utah Code Ann. § 61-2f-203(1)(c) (LexisNexis Supp. 2017).

¶22 The distinction between an agency-initiated disciplinary action and a request for agency action by a licensee is fatal to Heywood's laches argument. Heywood attempts to invoke laches to require the Division to renew his license because the Division did not act to revoke his license sooner. Laches is an "equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when the delay has prejudiced the party against whom relief is sought." *Laches*, Black's Law Dictionary (10th ed. 2014). "To successfully assert a laches defense, a defendant must establish both that the plaintiff unreasonably delayed in bringing an action and that the defendant was prejudiced by that delay." *Veysey v. Nelson*, 2017 UT App 77, ¶ 8, 397 P.3d 846 (citation and internal quotation marks omitted). In other words, laches is a defense to an action brought by a dilatory party, not a basis for affirmative relief.

¶23 Here, the denial of Heywood's license renewal was not the result of an action brought by the Division against Heywood. Instead, Heywood requested agency action when he submitted his license renewal application in 2014. Even assuming that the doctrine of laches could bar an administrative agency from initiating—or reviving—a disciplinary action where there was inexcusable delay and demonstrated prejudice,[2] it would not

---

2. This court has previously recognized "the institutional reluctance of Utah courts to apply equitable doctrines against

(continued…)

apply in the context of a request for agency action. Regardless of the Division's decision not to pursue disciplinary proceedings, it still had an obligation under the statute to consider Heywood's honesty, integrity, truthfulness, reputation, and competency before granting his 2014 request for license renewal.

¶24   While framed as a timeliness argument, the crux of Heywood's grievance is that it was unfair for the Division to base its decision on misconduct that occurred eight years earlier. To the extent Heywood is challenging the staleness of the evidence, Utah Code section 61-2f-203 places no time limitation on the evidence that the Division can consider in assessing the "honesty, integrity, truthfulness, reputation, and competency of the applicant." *See* Utah Code Ann. § 61-2f-203(1)(c). Although staleness might decrease the probative value of such evidence, the bankruptcy court's findings of misconduct were not viewed in isolation but in light of Heywood's attitude and behavior at the time of the Division hearing. As the Presiding Officer noted, Heywood did not accept responsibility or recognize the seriousness of his misconduct. This bears heavily on whether he is currently fit for licensure. Thus, the Division properly considered this evidence in reaching its decision.

---

(…continued)
municipal bodies and governmental subdivisions." *Tooele Assocs. Ltd. P'ship v. Tooele City*, 2011 UT App 36, ¶ 3, 251 P.3d 835. Even if this were a review from a disciplinary action initiated by the Division, it is doubtful that we would apply laches to prevent an agency from taking action to protect public welfare. "As a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917).

II. Issue Preclusion

¶25 Heywood claims that the Division erred as a matter of law in giving preclusive effect to the bankruptcy court's 2009 Memorandum Decision, which found he had committed fraud in connection with the 2006 transaction. "Issue preclusion, often referred to as collateral estoppel, prevents relitigation of issues already determined in a previous action." *Collins v. Sandy City Board of Adjustment*, 2000 UT App 371, ¶ 8, 16 P.3d 1251. "In effect, once a party has had his or her day in court and lost, he or she does not get a second chance to prevail on the same issues." *Buckner v. Kennard*, 2004 UT 78, ¶ 12, 99 P.3d 842. A party may be precluded from relitigating an issue if four criteria are met:

> (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.

*Gressman v. State*, 2013 UT 63, ¶ 37, 323 P.3d 998 (citation and internal quotation marks omitted).

¶26 Heywood does not contest the first three criteria of issue preclusion. He challenges only the fourth criterion, claiming that the 2009 Memorandum Decision is not a final judgment on the merits. Heywood argues that the "2009 Memorandum Decision was never final, but was rather interlocutory in nature and remained subject to appeal." He also contends that the bankruptcy court's approval of the parties' settlement agreement was "a *de facto vacatur*" of its 2009 Memorandum Decision, given that the language of the settlement released him from "all claims, demands, debts, obligations, liabilities, costs, expenses, rights of

action, causes of action, or judgments of any kind or character whatsoever."

¶27     The fact that Heywood ultimately elected to settle with the bankruptcy trustee does not affect the finality of the 2009 Memorandum Decision. In accordance with persuasive authority from other jurisdictions, we hold that a decision that fully resolves an issue on the merits, after giving the parties an opportunity to be heard, is final for purposes of issue preclusion even if the parties agree to a settlement that results in dismissal before the entry of final judgment. Even assuming that a prior decision vacated as part of a settlement would lose its preclusive effect, we conclude that no such vacatur occurred here. As a result, the 2009 Memorandum Decision was properly accorded preclusive effect on the issue of whether Heywood committed fraud.

A.     A Sufficiently Firm Decision May Have Preclusive Effect Even Where the Parties Settled Prior to Entry of Final Judgment.

¶28     A "final judgment" for purposes of issue preclusion "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982) (Am. Law Inst. 1982). The prior adjudication of the issue is considered sufficiently firm if "[(1)] it was not tentative, [(2)] the parties had an opportunity to be heard, and [(3)] there was an opportunity for review." *Carpenter v. Young*, 773 P.2d 561, 568 (Colo. 1989). Here, each of these factors supports the conclusion that the 2009 Memorandum Decision was final for purposes of precluding relitigation of whether Heywood committed fraud in connection with the 2006 transaction.

¶29     First, the 2009 Memorandum Decision was not "avowedly tentative," at least not with respect to the issue of Heywood's liability. *See id.* at 566. "A judgment is upon the merits when it

amounts to a declaration of the law as to the respective rights and duties of the parties based on . . . facts and evidence upon which the rights of recovery depend, irrespective of formal, technical, or dilatory objections or contentions." *State v. Sommerville*, 2013 UT App 40, ¶ 32, 297 P.3d 665 (omission in original) (citation and internal quotation marks omitted). The 2009 Memorandum Decision is a reasoned opinion setting forth detailed findings of fact and conclusions of law that support the bankruptcy court's determination that Heywood committed fraud. The bankruptcy court concluded that Heywood's conduct was "intentionally fraudulent or manifested a knowing and reckless indifference toward and disregard of [his client's] rights" and that Heywood was jointly and severally liable for the full amount of the client's damages.

¶30　　The only issue that remained unresolved was a possible award of punitive damages. Specifically, the bankruptcy court found that "punitive damages may be awarded" and allowed the trustee thirty days to request a hearing to determine the appropriate amount, noting that "[f]ailure to timely request and set the hearing shall be a bar to any award of punitive damages." Given that punitive damages had not yet been determined, the bankruptcy court stated:

> This ruling is specifically intended to be interlocutory and no judgment will be entered at this time. Final judgment will be entered following the above-described process and possible hearing on punitive damages.

¶31　　Leaving open the issue of damages did not render the bankruptcy court's decision on liability tentative. *See Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964) (holding that the mere fact that the damages had not yet been assessed should not deprive a ruling on liability of preclusive effect); *Aetna Cas. & Surety Co. v. Jeppesen & Co.*, 440 F. Supp. 394, 399–405 (D. Nev.

1977) (applying collateral estoppel on the fully litigated issue of liability even though the prior case settled on the issue of damages before entry of final judgment), *vacated and remanded on other grounds*, 642 F.2d 339 (9th Cir. 1981). The ruling was a firm declaration of law as to Heywood's liability for common law fraud.

¶32 Second, Heywood had an opportunity to be fully heard on this issue. During the bankruptcy proceeding, Heywood, who was represented by counsel, had the opportunity to present testimony and exhibits over the course of a five-day bench trial, to fully brief the issues, and to be heard at oral argument prior to issuance of the 2009 Memorandum Decision.

¶33 Third, the finding of fraud would have been subject to appeal upon entry of final judgment, but Heywood chose to forego any appeal in favor of settlement. Heywood acknowledges that the 2009 Memorandum Decision "remained subject to appeal prior to dismissal" of the action and that, "if the parties had not settled and instead had proceeded to judgment, those judgments likely could have been appealed." A party's "tactical decision to settle the case rather than seeking the entry of judgment and an appeal does not warrant the preclusion of collateral estoppel." *Ossman v. Diana Corp.*, 825 F. Supp. 870, 876 (D. Minn. 1993).

¶34 While Utah courts have not considered this issue, the weight of authority from other jurisdictions supports our conclusion that

> [i]f a court reaches a decision on the merits that is supported by a reasoned opinion, and the parties are fully heard and the issues fully litigated, the decision is final for collateral estoppel even if the parties enter into a settlement and stipulate to dismissal with prejudice prior to the entry of a final judgment.

*American Family Mut. Ins. Co. v. Clancy*, No. CV-09-01077-PHX-ROS, 2011 WL 13077359, at *3 (D. Ariz. Mar. 9, 2011); *see also Ossman*, 825 F. Supp. at 878 n.21 (collecting cases).[3] In the present case, the 2009 Memorandum Decision would have been subject to review had the parties not settled prior to the entry of final judgment. We conclude that the fact that Heywood chose to waive his right to review by entering into a settlement

---

3. *See also Bates v. Union Oil Co.*, 944 F.2d 647, 651 (9th Cir. 1991) (applying collateral estoppel where party assumed the risk that the judgment would have preclusive effect by settling and not pursuing appeal); *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1191–92 (5th Cir. 1982) (applying collateral estoppel even though prior case had been settled and dismissed with prejudice before the entry of final judgment); *Siemens Med. Sys., Inc. v. Nuclear Cardiology Sys., Inc.*, 945 F. Supp. 1421, 1436 (D. Colo. 1996) (applying issue preclusion to partial summary judgment where issue was fully litigated but defendant chose to forego appeal by settling before final judgment was entered); *Abbott Labs. v. Thermo Chem, Inc.*, 790 F. Supp. 135, 139–40 (W.D. Mich. 1991) (applying collateral estoppel even though the parties in the prior action reached a settlement agreement); *Donovan v. United States Postal Service*, 530 F. Supp. 894, 899 (D.D.C. 1981) (applying collateral estoppel to rulings that would have been subject to appeal had the defendant not settled and stipulated to dismissal); *Carpenter v. Young*, 773 P.2d 561, 568 (Colo. 1989) (applying collateral estoppel to issues decided on summary judgment even though the parties ultimately entered into a settlement agreement). *But see Glidden Co. v. Lumbermens Mutual Cas. Co.*, 861 N.E.2d 109, 118 (Ohio 2006) (holding that interlocutory order could not be given preclusive effect because case was ultimately settled and dismissed, given that, under Ohio law, "all prior interlocutory orders are dissolved after a dismissal").

agreement does not affect the finality of the decision for purposes of issue preclusion. *See Carpenter*, 773 P.2d at 568.

¶35   Significantly, no issues remained pending at the time the bankruptcy action was dismissed. Heywood cites to cases where courts refused to apply collateral estoppel because the interlocutory ruling was not necessarily subject to appeal at the time of settlement. *See, e.g., Continental Airlines, Inc. v. American Airlines, Inc.*, 824 F. Supp. 689, 706–09 (S.D. Tex. 1993) (refusing to apply collateral estoppel where the additional issues remained pending at the time of settlement, making it unclear whether the interlocutory order would have ultimately been essential to any final judgment); *Garcia v. General Motors Corp.*, 990 P.2d 1069, 1072–75 (Ariz. Ct. App. 1999) (refusing to apply collateral estoppel to a motion in limine that was not independently appealable). Here, by the terms of the 2009 Memorandum Decision, once the thirty-day period for seeking a further hearing had passed, punitive damages were barred. At that point, there were no remaining issues and all that was left for the bankruptcy court was the ministerial act of entering the final judgment. There is no dispute that the bankruptcy court's finding of fraud would have been reviewable had Heywood not chosen to forego appeal in favor of settlement.

¶36   With respect to the issue of fraud, the 2009 Memorandum Decision was not tentative, the parties were fully heard, and there was an opportunity for appellate review, which Heywood waived by settling prior to the entry of final judgment. As a result, Heywood was properly precluded from relitigating the issue of fraud.

B.   The 2009 Memorandum Decision Was Not Vacated.

¶37   Heywood argues the 2009 Memorandum Decision can have no preclusive effect because it was vacated, but the record does not support this contention. Heywood fails to identify any

order, docket entry, or other record showing that the bankruptcy court vacated its decision.

¶38    Heywood suggests that we should view the approval of the settlement and subsequent dismissal by the court as "a *de facto vacatur*," but he provides no authority for that proposition. While he argues that "parties are entitled to stipulate to the vacatur of a judgment in order to effectuate settlement," he cites no language in the settlement agreement where the parties conditioned the settlement on vacatur. More importantly, the parties never moved the bankruptcy court to set aside the 2009 Memorandum Decision, and the court never did so.[4]

¶39    Nonetheless, Heywood claims that the settlement agreement "clearly contemplated vacatur of the 2009 Memorandum Decision" because it released Heywood from "all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, or judgments of any kind or character whatsoever." This provision does not condition the settlement on vacatur of the 2009 Memorandum Decision nor does it purport to limit the preclusive effect of the bankruptcy court's decision.

---

4. Some courts have held that issue preclusion may apply even where the prior decision was set aside as part of the settlement. *See, e.g.*, *Bates*, 944 F.2d at 650 (holding that a judgment vacated as a condition of settlement can still have preclusive effect); *Chemetron Corp.*, 682 F.2d at 1191–92 (reasoning that a party who makes a tactical decision to risk an adverse decision by fully litigating an issue should not be able to avoid offensive collateral estoppel by later settling the case). We need not decide whether, and under what circumstances, a settlement conditioned on vacatur will preclude collateral estoppel because Heywood's settlement was not conditioned on vacatur and the 2009 Memorandum Decision was never set aside.

¶40    Because the 2009 Memorandum Decision was never vacated, the bankruptcy court's findings that Heywood engaged in fraud were entitled to preclusive effect.

CONCLUSION

¶41    On the issues presented for review, we hold that the Division's denial of Heywood's license renewal was not untimely or barred by the doctrine of laches and that the bankruptcy court's finding that Heywood committed fraud during the 2006 transaction was entitled to preclusive effect. We decline to review the issue of whether the Presiding Officer imposed an unreasonably harsh penalty because Heywood has failed to challenge the Executive Director's ruling that the issue was inadequately briefed. Accordingly, we decline to disturb the Executive Director's decision.

———————